UNITED STATES DISTRICT COURT<br>
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:22-cv-81293-AMC

ISLAND IP ACQUISTIONS, LLC,

       Plaintiff,

vs.

SPENCER ANTLE, ISLAND COMPANY LLC,
and ISLAND COMPANY RUM, INC.,

       Defendants.

_____/

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

Defendants, SPENCER ANTLE ("Antle"), ISLAND COMPANY LLC ("Island Company"), and ISLAND COMPANY RUM, INC. ("Rum, Inc.," and collectively, "Defendants"), by and through their undersigned counsel, hereby file their Answer, Affirmative Defenses and Counterclaim to the Complaint (hereinafter, "Complaint") filed by Plaintiff Island IP Acquisitions, LLC ("IP Acquisitions") Complaint and respond to the numbered paragraphs of the Complaint as follows:

<strong>NATURE OF THE ACTION</strong>

1. Admitted that this is an action for trademark infringement, cybersquatting, and conversion; otherwise denied.

2. Denied that the Assignment Agreement effectively transferred title of Island Company's intellectual property to Plaintiff.

3. The Final Judgment speaks for itself; otherwise denied.

4. Denied that Defendants have used and continue to use or have purported to transfer ownership or control intellectual property belonging to Plaintiff.

5.      Denied.

## THE PARTIES

6.      Without knowledge and therefore denied.

7.      Admitted that Antle is domiciled in Palm Beach County Florida and is doing business throughout the United States including within this District; otherwise denied.

8.      Admitted that Island Company is a limited liability company organized under the laws of the State of Florida; the Sunbiz Record speaks for itself. The remainder of Paragraph 8 sets forth a legal conclusion to which no response is required.

9.      The Final Judgment for Possession speaks for itself. The remainder of Paragraph 9 sets forth a legal conclusion to which no response is required.

10.     The Sunbiz Record speaks for itself. The remainder of paragraph 10 sets forth a legal conclusion to which no response is required.

11.     Admitted that Rum, Inc. is a corporation organized under the laws of the State of Delaware, and that Antle is the chairman of Rum, Inc. The remainder of Paragraph 11 sets forth a legal conclusion to which no response is required.

## JURISDICTION

12.     Admitted that this Court has subject matter jurisdiction pursuant to 15 U.S.C. §§ 1121(a) and 1114 and 28 U.S.C. §§ 1331.

13.     Admitted that this Court may exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14.     Admitted for jurisdictional purposes only.

15.     Admitted.

16.     Admitted.

2

17.     Admitted only that this Court has personal jurisdiction over Rum, Inc.; otherwise denied.

18.     Denied.

## **VENUE**

19.     Admitted that venue is proper in this District under 28 U.S.C. § 1391(b).

## **BACKGROUND**

### ***Defendants' Default***

20.     Admitted only that Island Company had various subsidiaries and affiliates which are largely inactive; otherwise denied.

21.     Admitted.

22.     Paragraph 22 does not contain a factual allegation that may be admitted or denied. To the extent that paragraph 22 represents the contents of a complaint filed in this District Court, the document speaks for itself.

23.     Paragraph 23 does not contain a factual allegation that may be admitted or denied. To the extent that paragraph 23 represents the contents of a complaint filed in this District Court, the document speaks for itself.

24.     To the extent that paragraph 24 represents the contents of a complaint filed in this District Court, the document speaks for itself. Admitted that Antle owns the website www.islandcompany.com.

25.     Paragraph 25 does not contain a factual allegation that may be admitted or denied, and the pleadings speak for themselves.

26.     Admitted that Antle signed the Loan Agreement in his capacity as manager of Island Company; the Loan Agreement speaks for itself.

27.     Admitted that Antle signed the SBA Note in his capacity as manager of Island Company; the SBA Note speaks for itself.

28.     Admitted that Island Company executed and delivered a Security Agreement signed by Antle in his capacity as manager of Island Company; the Security Agreement speaks for itself.

29.     Admitted; the Guarantee speaks for itself.

30.     Denied; the Guarantee speaks for itself.

31.     Without knowledge and therefore denied.

32.     The SunBiz Records speak for themselves; otherwise denied.

33.     Exhibit 8 speaks for itself.

34.     Exhibit 8 speaks for itself.

35.     The Final Judgment speaks for itself.

36.     The Final Judgment speaks for itself.

37.     The Final Judgment speaks for itself.

38.     The Final Judgment speaks for itself.

39.     Admitted.

40.     Without knowledge and therefore denied; Exhibit 2 speaks for itself.

41.     Without knowledge and therefore denied.

42.     Without knowledge and therefore denied.

43.     Admitted that Antle was notified of alleged infringement; denied as the remaining allegations of paragraph 43.

44.     Exhibit 11 speaks for itself.

45.     Exhibit 13 speaks for itself.

46.     Denied.

47.     Denied.

### *Defendants' purported transfer of Collateral to affiliated entities in an attempt to escape the reach of creditors*

48.     Denied that Defendants have purported to own certain intellectual property when they seek to obtain financing or assert rights associated with that property, and then subsequently disclaimed ownership of that property to avoid the reach of creditors. To the extent that paragraph 48 represents the contents of a complaint filed in this District Court, the document speaks for itself. The remainder of paragraph 48 does not contain a factual allegation that may be admitted or denied.

49.     Denied.

50.     Denied; Exhibit 8 speaks for itself.

51.     Exhibit 9 speaks for itself; the remainder of paragraph 49 does not contain a factual allegation that may be admitted or denied.

### *Defendants' Infringement of IP Acquisitions' Intellectual Property*

52.     Denied, Exhibit 16 speaks for itself.

53.     Denied.

54.     Admitted that the Island Company Instagram page made a post on May 30, 2022; Exhibit 16 speaks for itself; otherwise denied.

55.     Exhibit 16 speaks for itself.

56.     Exhibit 16 speaks for itself.

57.     Exhibit 17 speaks for itself.

58.     Exhibit 16 speaks for itself.

59.     Exhibit 16 speaks for itself.

60.     Exhibit 16 speaks for itself.

61.    Exhibit 16 speaks for itself.

62.    Exhibit 16 speaks for itself.

63.    Exhibit 16 speaks for itself.

64.    Exhibit 16 speaks for itself.

65.    Exhibit 16 speaks for itself.

66.    Exhibit 16 speaks for itself.

67.    Exhibit 16 speaks for itself.

68.    Exhibit 16 speaks for itself.

69.    Denied.

70.    Exhibit 18 speaks for itself.

## COUNT I:
## FEDERAL TRADEMARK INFRINGEMENT,
## SECTION 32 OF THE LANHAM ACT, 15 U.S.C. § 1114
## (ALL DEFENDANTS)

71.    Defendants reallege and incorporate their responses to paragraphs 1-70 as if fully set forth herein.

72.    Denied.

73.    Denied.

74.    Admitted that Rum, Inc. has applied for trademark applications with USPTO; otherwise denied.

75.    Denied.

76.    Denied.

77.    Denied.

78.    Denied.

79.    Denied.

80.     Denied.

81.     Denied that IP Acquisitions is entitled to any of the relief sought.

**COUNT II:**
**FEDERAL UNFAIR COMPETITION AND FALSE**
**DESIGNATION OF ORIGIN**
**SECTION 43 OF THE LANHAM ACT, 15 U.S.C. § 1125(A)**
**(ALL DEFENDANTS)**

82.     Defendants reallege and incorporate their responses to paragraphs 1-70 as if fully set forth herein.

83.     Denied.

84.     Denied.

85.     Denied.

86.     Denied.

87.     Denied.

88.     Denied.

89.     Denied that IP Acquisitions is entitled to any of the relief sought.

**. COUNT III:**
**COMMON LAW TRADEMARK INFRINGEMENT**
**(ALL DEFENDANTS)**

90.     Defendants reallege and incorporate their responses to paragraphs 1-70 as if fully set forth herein.

91.     Denied.

92.     Denied.

93.     Denied.

94.     Denied.

95.     Denied.

96.     Denied.

97.     Denied.

98.     Denied that IP Acquisitions is entitled to any of the relief sought.

### .COUNT IV:
### VIOLATION OF ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT,
### 15 U.S.C. §1125(d)(1)(A)
### (ALL DEFENDANTS)

99.     Defendants reallege and incorporate their responses to paragraphs 1-70 as if fully set forth herein.

100.     Denied.

101.     Denied.

102.     Denied.

103.     Denied.

### COUNT V:
### VIOLATION OF THE FLORIDA DECEPTIVE AND
### UNFAIR TRADE PRACTICES ACT (FDUTP) (ALL DEFENDANTS)

104. – 111.     Dismissed by Court Order.

### COUNT VI:
### CONVERSION (ALL DEFENDANTS)

112.     Defendants reallege and incorporate their responses to paragraphs 1-70 as if fully set forth herein.

113.     Denied.

114.     Denied.

115.     Denied.

116.     Denied.

117.     Denied that IP Acquisitions is entitled to any of the relief sought.

### JURY TRIAL DEMAND

Defendants do not demand a trial by jury.

## PRAYER FOR RELIEF

Defendants deny Plaintiffs' Prayer for Relief in all aspects.

## GENERAL DENIAL

Defendants deny each and every allegation of the Complaint to which they have not otherwise made a specific response in this Answer.

## AFFIRMATIVE DEFENSES

1.      To the extent Defendants are found liable for trademark infringement, the infringement is limited to acts occurring within the United States. The Lanham Act applies to activity occurring outside of the United States only in very limited circumstances. *Steele v. Bulova Watch Co.*, 344 U.S. 280, 286-87 (1952); 15 U.S.C. 1127. Here, any trademark infringement that occurred outside of the United States has minimal, if any, effect on United States commerce, and would create a conflict with Defendants' trademark rights established under foreign law and infringement on the sovereignty of those nations in which the trademark rights have been established.

2.      Several of the trademarks identified in Exhibit 1 to Plaintiff's Complaint are mere trademark applications and not registrations, and thus do not support infringement claims under the Lanham Act or Florida common law. *Juice & Java, Inc. v. Juice & Java Boca, LLC,* 2017 WL 11680256, *4 (S.D. Fla. 2017) (a registered mark is required to maintain a claim for trademark infringement under Section 32 of the Lanham Act).

3.      Several of the trademarks identified in Exhibit 1 to Plaintiff's Complaint are inactive, abandoned, cancelled, or dead trademarks, and thus do not support infringement claims under the Lanham Act or Florida common law. *Juice & Java, Inc.,* 2017 WL 11680256 at *5 (To

prevail in an action for trademark infringement, the plaintiff must show that its mark is valid (i.e., properly registered, not generic, not abandoned through non-use).

4.     The Complaint, in whole or in part, fails to state a claim upon which relief can be granted for violation of the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d)(1)(A) because several of the domain names identified by Plaintiff do not exist and/or are not registered.

5.     The Complaint, in whole or in part, fails to state a claim upon which relief can be granted for violation of the ACPA because Defendants are not, individually or collectively, the domain names' registrants or authorized users of the domain names' registrants for several of the domain names.

6.     The Complaint, in whole or in part, fails to state a claim upon which relief can be granted for violation of the ACPA because Defendants have not registered the domain names with bad faith intent.

7.     The Complaint, in whole or in part, fails to state a claim upon which relief can be granted for violation of the ACPA because Rum, Inc. owns a valid trademark in the name "Island Company Rum Simply the Smoothest X" and any domain names derived therefrom are fair use.

8.     The Complaint, in whole or in part, fails to state a claim upon which relief can be granted for violation of the ACPA because the domain names were not owned by Island Company and therefore they were not subject to the Foreclosure Judgment and subsequent resale by Centennial Bank and thus are not owned by Plaintiff.

9.     The Complaint, in whole or in part, is barred by the equitable doctrine of unclean hands. Plaintiff is not the owner of the domain names. Plaintiff has not acquired the domain names by way of a valid foreclosure sale.

10.     The Complaint, in whole or in part, is barred by the equitable doctrine of unclean hands. On information and belief, Plaintiff has made false or improper representations with the intent to induce the U.S. Patent and Trademark Office to issue trademark registrations. On information and belief, Plaintiff has wielded its trademark registrations against Defendants in this action, while knowing that they are, in whole or in part, invalid.

11.     The Complaint is barred, in whole or in part, by the defense of misrepresentation of material facts. The Complaint contains numerous factually inaccurate allegations, including, inter alia, that "Plaintiff owns a valid, subsisting, and incontestable United States Trademark Registration for its ISLAND COMPANY…. mark[], among other marks." Compl. ¶ 72.

12.     Plaintiff's alleged trademarks are invalid and therefore cannot support Plaintiff's claims because, on information and belief, Plaintiff has abandoned the alleged marks, has never used them in the United States, or otherwise does not have valid United States trademark rights in the alleged marks.

13.     Plaintiff lacks standing to bring these claims because it does not possess valid United States trademark rights in the alleged trademarks.

14.     The Complaint is barred, in whole or in part, by the failure of Plaintiff to join indispensable parties as defendants in this action, specifically the domain name registrants.

15.     The Complaint, in whole or in part, fails to state a claim upon which relief can be granted for conversion because Defendants have not wrongfully intended to deprive Plaintiff of its property. Rum, Inc. owns a valid trademark in the name "Island Company Rum Simply the Smoothest X" and any ownership or use of the trademark or social media accounts represents a good faith desire to market Rum Inc.'s legitimate business interests.

16.     The Complaint, in whole or in part, fails to state a claim upon which relief can be granted for conversion because Plaintiff does not own several of the social media accounts and

domain names, as identified by the Purchase Agreement executed between Plaintiff and Centennial Bank.

17.     Plaintiff lacks standing to bring its claim for conversion because it does not own several of the social media accounts and domain names, as identified by the Purchase Agreement executed between Plaintiff and Centennial Bank.

**WHEREFORE,** Defendants, Spencer Antle, Island Company LLC, and Island Company Rum, Inc. respectfully request that this Court enter judgment in their favor:

a.     Dismissing all counts asserted by Plaintiff against Defendants and denying all relief requested by Plaintiff with respect to Defendants; and

b.     Granting any other and further such relief as this Court deems just and proper.

## COUNTERCLAIM FOR CANCELLATION OF TRADEMARKS

Defendant/Counterclaimant ISLAND COMPANY RUM, INC. ("Rum, Inc."), pursuant to Federal Rule of Civil Procedure 13, files its Counterclaims for Cancellation of Trademarks and Trademark Application against Plaintiff/Counterdefendant ISLAND IP ACQUISITIONS, LLC ("IP Acquisitions"), and states:

1.     This is an action for injunctive relief, cancellation of trademarks pursuant to 15 U.S.C. § 1119, for damages, attorneys' fees, court costs and other appropriate relief.

## Parties and Venue

2.     Rum Inc. is a Delaware limited liability company doing business in the state of Florida.

3.     IP Acquisitions is a Delaware limited liability company.

4.     This Court has subject matter jurisdiction over the claims arising under 15 U.S.C. § 1119 and has ancillary jurisdiction over the common law claims.

5.     This Court has personal jurisdiction over IP Acquisitions because IP Acquisitions has submitted to this Court's jurisdiction by bringing claims in this Court.

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and because IP Acquisitions submitted to this Court's jurisdiction by bringing claims in this Court.

## FACTS RELEVANT TO ALL CLAIMS

**A.     Island Company and the Centennial Bank Loan.**

7.     Island Company, a now defunct limited liability company, was in the business of selling high quality island-style clothing and accessories in upscale resorts in the U.S., the Caribbean, and worldwide, and owned trademarks and service marks registered with the United States Patent and Trademark Office ("USPTO"), many of which marks have expired and/or have been abandoned, and only a few of which remain LIVE in the USPTO records.

8.     On or about December 3, 2013, Island Company obtained a loan from the predecessor to Centennial Bank, which loan was secured by Island Company's assets, including its intellectual property. The loan documents did not specify any trademarks and service marks then owned by Island Company, and Centennial Bank did not record any security interest against any of Island Company's trademarks and service marks with the USPTO.

9.     Following a series of hurricanes which decimated its resort business, Island Company fell on hard times, and defaulted under the loan.

10.     On March 29, 2019, a foreclosure action was brought by Centennial Bank against Island Company.

11.     In the foreclosure action, Centennial Bank never alleged or claimed Island Company improperly transferred any intellectual property, either under the loan documents or on any other basis.

B.    **Abandonment of the Island Company Trademarks**

12.    On or about July 1, 2019, Island Company permanently shuttered its operations with no intent to resume its operations or use its existing trademarks and service marks. Accordingly, the trademarks and service marks owned by and used in connection with Island Company's business were abandoned by Island Company.

13.    On September 9, 2019, the state court entered Summary Final Judgment holding that Centennial Bank's lien on Island Company's collateral was foreclosed.

14.    Centennial Bank never properly conducted a foreclosure sale which would have, by necessity, provided an inventory of all items foreclosed.

15.    Upon information and belief, Centennial Bank had no knowledge of any intellectual property, including any trademarks or service marks owned by Island Company and had no intent to resume any use of the trademarks or service marks. The trademarks and service marks thus remained abandoned.

16.    Since September 9, 2019, when Centennial Bank purportedly acquired ownership of Island Company's marks via its judgment, Centennial Bank never put the marks into use, never made any sales or rendered any services in connection with the marks, never attempted to license the marks, never attempted to solicit offers to purchase or auction the marks to third-parties, and most significantly allowed all the trademark registrations owned by Island Company that came due for maintenance filings to lapse, including Island Company's most valuable and important marks, specifically the following registrations, which were allowed to lapse:

| Mark: | Registration No: | DEAD date: |
|---|---|---|
| ISLAND COMPANY | 4,519,596 | 12/04/2020 |
| ISLAND COMPANY | 3,752,826 | 09/25/2020 |

14

| ISLAND COMPANY | 4,663,651 | 08/06/2021 |
| ISLAND COMPANY | 4,104,991 | 09/09/2022 |
| QUIT YOUR JOB BUY A TICKET GET A TAN FALL IN LOVE NEVER RETURN | 3,760,762 | 10/23/2020 |
| ESCAPE TRAVEL LIFE | 5,082,610 | 05/26/23 |

17.     Accordingly, to the extent Centennial Bank acquired ownership of Island Company's marks by virtue of its judgment, in September 2019 it abandoned those rights with no intent to resume use of the marks.

### C.     Sandals Attempts to Obtain Abandoned Trademarks.

18.     Notwithstanding Island Company and Centennial Bank's abandonment of the marks, Adam Stewart, the Executive Chairman of Sandals Resorts International Island Routes ("Sandals"), and IP Acquisitions, approached Antle, the managing member of Island Company, about the possibility of rebuilding the Island Company brand, and offered him a position as an employee. Antle told Stewart it could not be done. Stewart informed Antle that he was going to attempt to acquire the intellectual property of Island Company from Centennial Bank through his attorneys; however, Stewart would not provide Antle with any information concerning Stewart's negotiations with Centennial Bank.

19.     Those same attorneys representing Stewart, Sandals, and IP Acquisitions previously represented Island Company. Upon information and belief, the attorneys shared confidential business information of not only Island Company, but its unrelated entities, including Rum Inc.'s predecessor in interest, Island Holding Group, a Cayman Island corporation.

### D.     RUM INC. Trademark

20.     Since July 21, 2016, nonparty Island Holding Group was in the business of selling rum and owned the trademark registration no. 4,902,534 for ISLAND COMPANY RUM SIMPLY

15

THE SMOOTHEST X (and design) (the "Rum X Mark"), which has been public record since July 25, 2016 by virtue of a recorded assignment with the USPTO.[1]

21.     On October 14, 2021, Island Holding Group assigned the Rum X Mark to Rum Inc.[2],

22.     Island Company had not owned the Rum X Mark since July 21, 2016, and so the mark was not, and could not, be part of Island Company's assets which Centennial Bank foreclosed upon in 2019.

23.     Neither Island Holding Group nor Rum Inc. was a party to the foreclosure litigation with Centennial Bank, and as result, the Rum X Mark was never the subject of the foreclosure by Centennial Bank against Island Company.

### E.     IP Acquisitions Attempts to Obtain Trademarks

24.     Almost two years after Centennial Bank's judgment against Island Company, on or about June 14, 2021, IP Acquisitions purported to buy Island Company's intellectual property which had been foreclosed by Centennial Bank. IP Acquisitions' purchase was memorialized in that certain Intellectual Property Purchase Agreement and Assignment ("Purchase Agreement") to which Island Company was not a party and of which it had no knowledge.

25.     Attached to the Purchase Agreement is a schedule of trademarks purportedly owned by Island Company that, upon information and belief, was likely provided to Stewart, Sandals, and IP Acquisitions by Island Company's prior attorneys.

26.     The Purchase Agreement purports to assign the marks on the schedule to IP Acquisitions, but (correctly) does not list the Rum X Mark owned by Island Holding Group. The

---

[1] See, https://assignments.uspto.gov/assignments/q?db=tm&reel=5840&frame=0004.

[2] See, https://assignments.uspto.gov/assignments/q?db=tm&reel=7474&frame=0388 .

Rum X Mark could not have been included as part of the Purchase Agreement because it was not owned by Island Company at the time of Centennial Bank's foreclosure, and thus was not Centennial Bank's property to convey to IP Acquisitions.

27.     On June 23, 2021, ten (10) days after it purportedly purchased Island Company's intellectual property pursuant to the Purchase Agreement, IP Acquisitions through its legal counsel reached out to Antle to offer him a "consulting agreement," presumably under the guise of purchasing from Antle or others additional intellectual property not conveyed by Centennial Bank through the Purchase Agreement. The consulting agreement fee was $100,000.00, payable as follows and pursuant to the following transfers of intellectual property:

     i.  25% upon transfer of all domain names

    ii.  25% upon transfer of all trademarks

   iii.  25% upon transfer of all social media handles

   iv.  25% upon successful transfer of the rum company brand.

28.     If IP Acquisitions had already purchased from Centennial Bank the intellectual property sought by the consulting agreement, there would be no need to offer Antle compensation for its purchase. In other words, its attempt to buy the intellectual property from Antle was an open admission that its acquisition under the Purchase Agreement was incomplete to its liking.

29.     This notwithstanding, both Stewart and his legal counsel repeatedly made it clear that they had no bona fide intention of going into the rum business but merely wanted to acquire the rum business assets to "kill" the Rum Inc. brand.

30.     This desire to purchase and then eliminate Rum Inc.'s brand and interfere with and destroy Rum Inc.'s business remained a theme for IP Acquisitions.

**F.      IP Acquisitions' Spurious Litigation and Fraudulent Trademark Registration.**

        1.      IP Acquisitions sues Rum Inc. for trademark infringement.

31.      Despite having full knowledge that the Rum X Mark was owned by a wholly separate entity, was never part of  the Island Company collateral foreclosed by Centennial Bank, was not included in the Purchase Agreement from Centennial Bank, and was not transferred pursuant to a consulting agreement with Antle, IP Acquisitions nevertheless brought this lawsuit against Rum Inc. disingenuously claiming that IP Acquisitions owns Rum Inc.'s Rum X Mark (by virtue of a wholly self-serving Exhibit 1 to the Complaint [D.E. 1]), and further disingenuously claiming that Rum Inc. is infringing its own trademark registration.

32.      As a matter of long settled law, IP Acquisitions' trademark infringement claims under Section 32 of the Lanham Act, 15 U.S.C. § 1114 require a federal registration. Sidestepping this requirement of an actual registration, IP Acquisitions instead cited to its suspended application serial no. 97,094,861 for "rum" (discussed below), as well as its other pending applications, serial nos. 97,094,937; 97,094,920; 97,094,876; 97,094,894, 97,094,838, 97,094,798, and two DEAD registrations nos. 4,104,991 and 5,082,610. That is, IP Acquisitions has no valid registration upon which to base its infringement claim against Rum Inc.'s Rum X Mark.

33.      IP Acquisitions also improperly included claims for federal trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114, based on the legally abandoned registrations nos. 4,187,479; 4,789,378; 5,045,837; 3,256,216; 4,272,347; 4,272,025; 4,272,020; 4,272,017, and 4,272,012.

2.      IP Acquisitions' trademark applications for the "Island Company" mark.

34.     On October 27, 2021, IP Acquisitions filed six new applications, serial nos. 97,094,937, 97,094,920, 97,094,876, 97,094,894, 97,094,838, and 97,094,798, for "ISLAND COMPANY".

35.     For each of the six applications, IP Acquisitions declared that

"[t]he applicant has a bona fide intention to use the mark in commerce and had a bona fide intention to use the mark in commerce as of the application filing date on or in connection with the goods/services in the application."

36.     On February 10, 2023, IP Acquisitions' application no. 970,094,838 was suspended by the USPTO due to a potential likelihood of confusion with both Rum Inc.'s preexisting application for the "Rum Inc." mark (application no. 97,087,776), and an unrelated non-party's application for a separate "Island" mark.

37.     On March 3, 2023, IP Acquisitions' application no. 97,094,798 was suspended due to a likelihood of confusion with Rum Inc.'s application for the "Rum Inc." mark (application no. 97,087,776). Despite IP Acquisitions' argument that the marks were different, the USPTO found that "the marks are identical in part."

38.     On February 27, 2023, IP Acquisitions' application no. 97,094,861 (the "Rum Application") was also suspended based on both Rum Inc.'s existing Rum X Mark registration, and on Rum Inc.'s pending applications serial nos. 97,087,613 and 97,087,717, which have earlier priority filing dates.

3.      IP Acquisitions Files Its Fraudulent Trademark Application and Registration

39.     Fraud in procuring or maintaining a trademark registration occurs when an applicant for registration or a registrant knowingly makes false, material representations of fact in

connection with an application for a registered mark. In such an action involving a registered mark, the court may order the cancellation of the registration.

a.    *IP Acquisitions' fraudulent Rum Application.*

40.    On October 27, 2021, IP Acquisitions filed its Rum Application.

41.    As indicated in paragraph 38 above, the Rum Application was suspended by the USPTO. The Rum Application is substantially similar to Rum Inc.'s registered Rum X Mark because the Rum Application includes the same words "Island Company" and "Island Company Rum Simply the Smoothest" as in the Rum X Mark, and the two marks are in the same goods category: rum.

42.    Moreover, IP Acquisitions' Rum Application was filed in bad faith, as IP Acquisitions had no bona fide intent to use the mark, but rather merely sought to interfere with Rum Inc.'s legitimate business.

43.    As well, IP Acquisitions knowingly and fraudulently failed to disclose on its Rum Application Rum Inc.'s prior use of the Rum X Mark, and instead fraudulently declared:

> "*To the best of the signatory's knowledge and belief, **no other persons**, except, if applicable, concurrent users, **have the right to use the mark** in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.*"

(Emphasis added in bold).

44.    Additionally, IP Acquisitions, despite having no intention of using the "Island Company" mark in commerce as to rum, knowingly and fraudulently declared to the contrary, wherein it stated:

> "[t]he applicant has a **bona fide intention to use the mark in commerce** and had a bona fide intention to use the mark in commerce as of the application filing date on or in connection with the goods/services in the application."

(Emphasis added in bold).

45.     In its knowingly false statements in its declaration for the Rum Application, IP Acquisitions is attempting to fraudulently obtain the Island Company mark in respect to rum.

b.     *IP Acquisitions' other fraudulent trademark registrations.*

46.     IP Acquisitions, in furtherance of its intentional conduct to harm and interfere with Rum Inc.'s legitimate business interests, committed fraud on the USPTO on February 11, 2022 when it filed a Combined Declaration of Use and Incontestability under Section 8 and Section 15 for registration no. 4,789,378 ("Mark 378").

47.     IP Acquisitions knew that Mark 378 had not been in use since 2019, but nevertheless filed the Section 15 declaration knowingly and fraudulently attesting that:

> "**the mark has been in continuous use in commerce for five consecutive years** after the date of registration, or the date of publication under 15 U.S.C. § 1062(c), **and is still in use in commerce on or in connection with all goods/services**, or to indicate membership in the collective membership organization, **listed in the existing registration.**"

(Emphasis added in bold).

48.     IP Acquisitions, with knowledge that Mark 378 had been legally abandoned by Island Company and Centennial Bank, nevertheless filed Section 8 and 15 declarations making knowing and fraudulent misrepresentations relative to Mark 378's abandonment to maintain the registration to which it is not otherwise entitled.

49.     Further, IP Acquisitions filed specimens of use in support of its Section 8 declaration on the very last day of the grace period before the Mark 378 registration was set to permanently lapse without actual bona fide use of the mark. The specimens were knowingly false and fraudulent in numerous respects, and upon information and belief, there was no bona fide use of the mark at the time of filing the Section 8 and 15 (contrary to IP Acquisitions' knowing and false representations, to wit:

- The picture of the clothing submitted as a specimen is of old clothing that has not been produced or sold in the marketplace for approximately ten (10) years – as established by the "Escape Travel Live" description. It is Island Company clothing, as further identified by the several tags it bears in the photographs, the clothing likely purchased on eBay, or another third company vendor website. It was not manufactured by IP Acquisitions.

- The Purchase Order is dated February 10, 2022, the day before the last day filing on February 11, 2022;

- Eclipse Goods, LLC, the entity identified on the "purchase order," was an agent of IP Acquisitions or its controlling company, Sandals, on the date of Section 8 filing. Tellingly, Eclipse Goods, LLC was created on January 24, 2022, just days before the filing on February 11, 2022;

- The address on the purchase order for Eclipse Goods, LLC is a UPS Store, without a post office box even identified;

- Upon information and belief, Eclipse Goods, LLC has not engaged in any business since its inception, and no goods were shipped in accordance with the purchase order;

- The Manager of Eclipse Goods, Inc. is identified on Sunbiz as Johann Epstein. Johann Epstein is the former call center director for Sandals and was employed by and associated with Sandals for many years. Upon information and belief, Mr. Epstein still has close ties to Sandals; and

- HPI, the purveyor identified on the purchase order, is upon information and belief Hospitality Purveyors, Inc., the procurement agent for Sandals. Upon further information and belief, HPI operates its web domain from a server owned by Sandals.

50.     Further, upon information and belief, in the more than a year and a half following its February 11, 2022 application, IP Acquisitions has not used Mark 378 in commerce.

22

51.     IP Acquisition acknowledged in its declaration that:

"The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such **willful false statements and the like may jeopardize the validity of this submission and the registration**, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true."

(Emphasis added in bold).

52.     Under 15 U.S.C. § 1120, any person who procures a registration "by a false statement or fraudulent declaration or representation" may be liable in a civil action. Under 15 U.S.C. §1064(3), a party may petition to cancel a registered trademark on the ground that the "registration was obtained fraudulently."

**G.     The Island Company Trademarks Have Been Abandoned or Are Dead.**

**1.     The Abandoned Marks.**

53.     IP Acquisitions, together with its predecessors in interest, Centennial Bank, and Island Company, abandoned additional marks as a result of non-use.

54.     Island Company shut down operations and ceased using its marks with the intent not to resume use on July 1, 2019. Centennial Bank thereafter obtained a foreclosure judgment on September 9, 2019, and to the extent that Centennial Bank acquired trademarks from Island Company, it acquired those marks with the intent not to resume use in September 2019.

55.     Therefore, all of the Island Company's formerly registered marks that are the subject of IP Acquisitions' Complaint (Exhibit 1) remained unused in commerce since at least July 1, 2019, a period of three consecutive years. Those marks (the "Abandoned Marks") are:

| Mark: | Registration No: | Status alleged by Defendants in this action |
|---|---|---|
| ISLAND COMPANY | 4,187,479 | ABANDONED |
| ISLAND COMPANY ESCAPE TRAVEL LIVE | 4,789,378 | ABANDONED |

| ESCAPE TRAVEL LIVE | 5,045,837 | ABANDONED |
|---|---|---|
| ESCAPE TRAVEL LIVE | 3,256,216 | ABANDONED |
| QUIT YOUR JOB BUY A TICKET GET A TAN FALL IN LOVE NEVER RETURN | 4,272,347 | ABANDONED |
| QUIT YOUR JOB BUY A TICKET GET A TAN FALL IN LOVE NEVER RETURN | 4,272,025 | ABANDONED |
| QUIT YOUR JOB BUY A TICKET GET A TAN FALL IN LOVE NEVER RETURN | 4,272,020 | ABANDONED |
| QUIT YOUR JOB BUY A TICKET GET A TAN FALL IN LOVE NEVER RETURN | 4,272,017 | ABANDONED |
| QUIT YOUR JOB BUY A TICKET GET A TAN FALL IN LOVE NEVER RETURN | 4,272,012 | ABANDONED |

2.    The Dead Marks

56.    IP Acquisitions, together with its predecessors in interest, Centennial Bank, and Island Company, have allowed several marks to become "dead."

57.    Each of the following marks (the "Dead Marks") have been allowed to lapse:

| Mark: | Registration No: | USPTO Status |
|---|---|---|
| ISLAND COMPANY | 4,519,596 | DEAD |
| ESCAPE TRAVEL LIVE | 5,082,610 | DEAD |
| ISLAND COMPANY | 3,752,826 | DEAD |
| ISLAND COMPANY | 4,663,651 | DEAD |
| ISLAND COMPANY | 4,104,991 | DEAD |
| QUIT YOUR JOB BUY A TICKET GET A TAN FALL IN LOVE NEVER RETURN | 3,760,762 | DEAD |

58.    None of the Dead Marks has been used in commerce in more than three years.

24

59.     A "dead" mark is not registered, therefore, IP Acquisitions has no enforceable rights under the Lanham Act as to the Dead Marks.

## COUNT I: CANCELLATION OF TRADEMARK
### (fraud pursuant to 15. U.S.C. § 1064)

60.     Rum Inc. incorporates allegation in the foregoing paragraphs 1-59 as if fully set forth herein.

61.     Mark 378 is subject to cancellation on the grounds of fraud.

62.     IP Acquisitions made knowing, false, material representations of fact in connection with its February 11, 2022 Combined Declaration of Use and Incontestability under Section 8 and 15 with the intent to deceive the USPTO.

63.     Fraud by IP Acquisitions was compounded by its improper and unfounded claim for infringement of Mark 378 against Rum Inc.

64.     Fraud by IP Acquisitions was further compounded by filing the Section 15 declaration and fraudulently alleging in this action that the Mark 378 is incontestable to establish the right to have the Mark 378 registration accepted in this action as conclusive evidence of the registrant's exclusive right to use the registered mark in commerce.

65.     Rum Inc. has been and will be damaged by the fraudulent registration of Mark 378.

WHEREFORE, Rum Inc. respectfully requests that this Court enter judgment against IP Acquisitions and in favor of Rum Inc., (i) canceling Mark 378, registration no. 4,789,378, in its entirety as a result of fraud, (ii) certifying the Order cancelling the mark to the Commissioner of the USPTO, (iii) enjoining IP Acquisitions from bringing infringement lawsuits against Rum Inc. or its principals based on Mark 378, (iv) awarding damages and attorneys' fees pursuant to 15 U.S. Code § 1117 against IP Acquisitions, and (v) entering any other relief as it deems necessary and proper.

## COUNT II: CANCELLATION OF TRADEMARK
### (abandonment pursuant to 15. U.S.C. § 1064)

66.     Rum Inc. incorporates allegations in the foregoing paragraphs1-59 as if fully set for herein.

67.     The Abandoned Marks are subject to cancellation because the marks were abandoned due to nonuse with intent not to resume use.

68.     Each of the Abandoned Marks was abandoned on or before July 1, 2019, with the intent not to resume use.

69.     Each of the Abandoned Marks had three consecutive years of nonuse use, creating a presumption of abandonment and establishing prima facie evidence of abandonment.

70.     IP Acquisitions has improperly brought claims for infringement of the Abandoned Marks against Rum Inc.

71.     Rum Inc. has been and will be damaged by registration of the Abandoned Marks.

WHEREFORE, Rum Inc. respectfully requests that this Court enter judgment against IP Acquisitions and in favor of Rum Inc., (i) cancelling registration nos. 4,789,378, 4,187,479, 5,045,837, 3,256,216, 4,272,347, 4,272,025, 4,272,020, 4,272,017, and 4,272,012 in their entirety as a result of their abandonment, (ii) certifying the Order cancelling the marks to the Commissioner of the USPTO, (iii) enjoining IP Acquisitions from bringing infringement lawsuits against Rum Inc. or its principals based on the Abandoned Marks, (iv) awarding damages and attorneys' fees pursuant to 15 U.S. Code § 1117 against IP Acquisitions, and (v) entering any other relief as it deems necessary and proper.

## COUNT III: CANCELLATION OF TRADEMARK
### (pursuant to 15. U.S.C. § 1119)

72.     Rum Inc. incorporates allegations in the foregoing paragraphs 1-59 as if fully set for herein.

73.     Rum Inc. is the owner of the registered Rum X Mark.

74.     IP Acquisitions' Rum Application, if registered, is likely to cause confusion or mistake, or to deceive as to affiliation with Rum Inc.'s Rum X Mark.

75.     Additionally, IP Acquisitions made knowing, false, material representations of fact in connection with the Rum Application with the intent to deceive the USPTO.

76.     IP Acquisitions filed its Rum Application in bad faith, and with no bona fide intent to use the mark, but rather merely sought to harm and interfere with Rum Inc.'s legitimate business.

WHEREFORE, Rum Inc. requests this Court enter judgment against IP Acquisitions and in favor of Rum Inc., (i) cancelling the Rum Application, (ii) certifying the Order cancelling the Rum Application to the Commissioner of the USPTO, (iii) enjoining IP Acquisitions from bringing infringement lawsuits against Rum Inc. or its principles based on the Rum Application, (iv) awarding Rum Inc. its costs, prejudgment interest, damages and attorneys' fees pursuant to 15 U.S. Code § 1117 against IP Acquisitions, and entering such further relief as the Court deems just and proper.

DATE:  June 23, 2023                           */s/Traci H. Rollins, Esq.*
                                               TRACI H. ROLLINS, ESQ.
                                               Florida Bar No. 769071
                                               JOHN W. TERWILLEGER, ESQ.
                                               Florida Bar No. 107095
                                               GABRIELLE WILSON, ESQ.
                                               Florida Bar No. 1036090
                                               GUNSTER, YOAKLEY & STEWART, P.A.
                                               777 South Flagler Drive
                                               Suite 500 East
                                               West Palm Beach, FL  33401
                                               Telephone: (561) 655-1980
                                               Facsimile: (561) 655-5677
                                               trollins@gunster.com
                                               jterwilleger@gunster.com
                                               gwilson@gunster.com

ACTIVE:18613684.6