UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-81293-BER

ISLAND IP ACQUISITIONS, LLC,

      Plaintiff,

v.

SPENCER ANTLE,
ISLAND COMPANY LLC, and,
ISLAND COMPANY RUM, INC.

      Defendants.

_____/

**ORDER ON MOTION TO DISMISS AND TO STRIKE [ECF No. 44]**

Plaintiff Island IP Acquisitions, LLC ("Island IP") moves to dismiss Defendant Island Company Rum, Inc.'s ("Island Rum") counterclaims and to strike three affirmative defenses asserted by all Defendants. The Motion is GRANTED IN PART and DENIED IN PART.

Island IP sues for trademark infringement, unfair competition, cybersquatting, and conversion. ECF No. 1. In sum, Island IP claims that it purchased certain intellectual property that formerly belonged to Defendant Island Company LLC and that Defendants Antle and Island Rum are now improperly using that intellectual property. The intellectual property in question includes trademarks, social media accounts, and domain names.

Defendants deny these allegations. ECF No. 39. Their Answer asserts 17 affirmative defenses. Affirmative Defense 13 says Island IP lacks standing because it does not have valid trademark rights in the intellectual property. Affirmative Defense 14 says that Island IP has not joined indispensable parties as defendants. Affirmative Defense 17 says Island IP lacks standing to sue for conversion because it does not own some of the social media accounts and domain names in question.

Island Rum also asserts three counterclaims. ECF No. 39. Counterclaim I says that one of the trademark registrations (the '378 Mark) should be cancelled because Island IP committed fraud on the U.S. Patent and Trademark Office (USPTO). Counterclaim II says that the registrations for multiple trademarks (including the '378 Mark) should be cancelled because those marks were abandoned. Finally, Counterclaim III asks to cancel Island IP's pending application for a trademark (the '861 Application) because of (1) likelihood of confusion with one of Island Rum's marks, and (2) fraud in connection with the application. ECF No. 39.

Island IP moves to dismiss all three Counterclaims and to strike Affirmative Defenses 13, 14, and 17. ECF No. 44. Island IP says Counterclaims I and II fail to state a claim upon which relief can be granted. It says this Court lacks subject matter jurisdiction over Counterclaim III. It says the affirmative defenses should be stricken because they are not pled with the necessary specificity.

I. LEGAL PRINCIPLES

A. *Failure to State a Claim — Rule 12(b)(6)*

On a motion to dismiss under Rule 12(b)(6), the Court must view the well-pled factual allegations in a claim in the light most favorable to the non-moving party. *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). Viewed in that manner, the factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the claim are true (even if doubtful in fact). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

When evaluating a motion to dismiss under Rule 12(b)(6):

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 679. With limited exceptions, the Court looks only to the allegations in the complaint, any documents appended to the complaint or incorporated by reference into it, and any judicially-noticed facts. *Reed v. Royal Caribbean Cruises Ltd.*, No. 20-CV-24979-RAR, 2022 WL 3027906, at *6 (S.D. Fla. Aug. 1, 2022) (J. Ruiz). The Court also may consider other documents whose authenticity is undisputed and which are central to the claims in the matter. *Day v. Taylor*, 400 F.3d

3

1272, 1276 (11th Cir. 2005). Factually unsupported allegations based "on information and belief" are not entitled to the assumption of truth. *See Scott v. Experian Info. Sols., Inc.*, No. 18-CV-60178, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) (J. Altonaga) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard.").

   B. *Pleading Fraud — Rule 9(b)*

Where a pleading alleges a cause of action sounding in fraud, the allegations must satisfy Federal Rule of Civil Procedure 9(b), which says "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) does not change the elements of the underlying cause of action; it merely requires heightened fact pleading. "[A] plaintiff is required to plead the 'who, what, when, where, and how' pertaining to the underlying fraud." *Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1098 (S.D. Fla. 2019) (J. Moreno) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006)). The purpose of the particularity pleading requirement "is to alert defendants to their precise misconduct and protect them against baseless charges of fraudulent behavior." *Cardenas*, 418 F. Supp. 3d at 1098 (citing *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988)).

   C. *Subject Matter Jurisdiction — Rule 12(b)(1)*

A party can challenge the Court's subject matter jurisdiction either facially or factually. "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in

4

deciding whether to grant the motion. Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n. 5 (11th Cir. 2003). In evaluating a factual challenge, Courts may consider extrinsic evidence such as testimony and affidavits. *Id.* The parties have a qualified right to jurisdictional discovery to develop the factual record, if they make a timely request and jurisdictional facts are genuinely in dispute. *See ACLU v. City of Sarasota*, 859 F.3d 1337, 1341 (11th Cir. 2017) ("[W]hen facts that go to the merits and the court's jurisdiction are intertwined and genuinely in dispute, parties have a 'qualified right to jurisdictional discovery.'") (citations omitted).

Even if a party has not raised the issue, a federal court has an independent obligation to ensure its own subject matter jurisdiction. *United States v. Hays*, 515 U.S. 737, 742 (1995); *Wilson v. Minor*, 220 F.3d 1297, 1303 n. 11 (11th Cir. 2000) ("Of course, a federal court has an independent obligation to ensure that it has jurisdiction over any claim brought before it even if jurisdictional questions are not raised by either party."); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

D. *Striking Affirmative Defenses — Rule 12(f)*

Federal Rule of Civil Procedure 8(c) requires a Defendant to "affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c)(1). An affirmative defense "admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification or other negating matter." *ECB USA, Inc. v. Chubb Ins. Co. of New Jersey*, No. 20-20569-CIV, 2021 WL 4973579, at *2 (S.D. Fla. June 29, 2021) (J. Torres) (citations omitted). In contrast, a defense that points

out a defect in the Plaintiff's ability to prove a *prima facie* case is a denial. *E.g., In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988). An affirmative defense under Rule 8(c) does not have to meet the same pleading requirements as a complaint under Rule 8(a). *Laferte v. Murphy Painters, Inc.*, No. 17-CIV-60376, 2017 WL 2537259, at *2 (S.D. Fla. June 12, 2017) (J. Bloom); *Tsavaris v. Pfizer, Inc.*, 310 F.R.D. 678, 682 (S.D. Fla. 2015) (J. Moore). The responsive pleading is sufficient if it provides fair notice of the defense being asserted. *Ramnarine v. CP RE Holdco 2009-1, LLC*, No. 12-61716-CIV, 2013 WL 1788503, at *3 (S.D. Fla. Apr. 26, 2013) (J. Rosenbaum) ("Therefore, so long as Defendants' affirmative defenses give Plaintiffs notice of the claims Defendants will litigate, the defenses will be appropriately pled under Rules 8(b) and (c)"); *Losada v. Norwegian (Bahamas) Ltd.*, 296 F.R.D. 688, 691 (S.D. Fla. 2013) (J. King) (The purpose of an affirmative defense is to give the opposing party notice of issues to be litigated.).

Rule 12(f) permits the Court to strike a legally insufficient defense. Fed. R. Civ. P. 12(f). "'[A]n affirmative defense must be stricken when the defense is comprised of no more than bare-bones, conclusory allegations' or is 'insufficient as a matter of law.' An affirmative defense is insufficient as a matter of law where: '(1) in the face of the pleadings, it is patently frivolous, or (2) it is clearly invalid as a matter of law.'" *Northrop & Johnson Holding Co., Inc. v. Leahy*, No. 16-CV-63008, 2017 WL 5632041, at *3 (S.D. Fla. Nov. 22, 2017) (internal citations omitted) (J. Bloom).

II.     COUNTERCLAIMS

A. *Counterclaim I*

On February 11, 2022, Island IP filed a Combined Declaration of Use and Incontestability ("Declaration") for the '378 Mark under Sections 8 and 15 of the Lanham Act. ¶ 46.[1] Counterclaim I alleges that the '378 Mark's registration should be cancelled because (1) the Section 15 Declaration falsely and fraudulently said the mark had been in continuous use, when, in truth, it had been legally abandoned by Island Company LLC and Centennial Bank, ¶¶47, 48, and (2) the Declaration contained a false and misleading specimen of use. ¶49.[2]

Under Section 8 of the Lanham Act, a trademark's registration must be renewed periodically. 15 U.S.C. §1058(a). As part of the renewal process, the registrant must file an affidavit that says (among other things) that the mark is "in use in commerce" and is accompanied by specimens "showing current use of the mark in commerce." 15 U.S.C. §1058(b)(1). Separately, under Section 15 of the Lanham Act, a registered mark becomes incontestable if "such registered mark has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce." 15 U.S.C. §1065. "Use" of a mark means "the bona fide use of such mark made in the ordinary course of trade, and not made merely to

---

[1] Unless otherwise noted, all paragraph numbers correspond to the paragraphs in the Counterclaim. ECF No. 39.

[2] The Declaration and the specimen of use are not part of the record.

7

reserve a right in a mark." *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1174 n.7 (11th Cir. 2002) (quoting 15 U.S.C. §1127).

A trademark registration can be cancelled for fraud if it was obtained or renewed fraudulently. 15 U.S.C. § 1064(3); *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009). The party trying to cancel the registration must prove by clear and convincing evidence that the applicant knowingly made a false representation of fact to the USPTO, with an intent to deceive, about a material matter. 11th Circuit Pattern Jury Instruction 10.4.

Island IP says Counterclaim I fails to state a claim because it does not allege abandonment (and therefore falsity) with the specificity required by Rule 9(b). I disagree. The Counterclaim satisfies Rule 9(b) because it adequately identifies the allegedly false statements and the allegedly fraudulent aspects of the specimen of use.

Island IP next argues that the Counterclaim does not plausibly allege fraudulent knowledge or intent. Although the parties focus on the issue of abandonment, the specific allegedly false statements in the Declaration were (1) "the mark has been in continuous use in commerce for five consecutive years" and (2) "is still in use in commerce on or in connection with all goods/services . . . listed in the existing registration." ¶47.

Even assuming the '378 Mark had not been in continuous use for five consecutive years and/or was not still in use in commerce in February 2022, Counterclaim I does not plausibly allege that Island IP knew these facts. Island Rum

8

argues that Island IP knew these representations were false because it knew the '378 Mark had been abandoned. ¶48. As discussed more fully below, the only alleged factual bases for abandonment are (1) that Island Company LLC intended to permanently cease using the mark as of July 2019, ¶12, and (2) that Centennial Bank later abandoned the marks by non-use. ¶16. Neither of these facts, if true, plausibly alleges that the Declaration was made with knowledge of its falsity and with intent to deceive.

Even assuming Island Company LLC intended to permanently cease using the mark in 2019, Counterclaim I does not allege that Island IP was aware of this intent when it filed the Declaration in February 2022. So, Island Company LLC's alleged abandonment does not make Island IP's Declaration a knowing false or fraudulent representation of fact to the USPTO.

Similarly, Counterclaim I does not allege facts that plausibly imply that Island IP knew about Centennial Bank's non-use of the '378 Mark. It merely summarily and speculatively alleges, "[Island IP] knew that Mark '378 had not been in use since 2019." ¶47. That conclusion is not entitled to the assumption of truth because it does not allege predicate facts explaining *how* Island IP knew about Centennial Bank's use (or non-use) of the '378 Mark.[3]

---

[3] Island Rum correctly argues that knowledge can be alleged generally. Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Although knowledge need not be pled with the particularity required to plead fraud, the pleading must still allege sufficient facts entitled to the assumption of truth to create a plausible claim for relief.

Counterclaim I also fails to plausibly allege that Island IP knew Centennial Bank intended to abandon the mark. At most, it alleges Centennial Bank did not use the mark between 2019 and 2021. In any event, even if Island Rum adequately alleged that Island IP knew that the mark had not been used, mere non-use can create only a presumption of abandonment. Assuming that presumption applies here, it falls short of creating a plausible inference that Island IP knew in February 2022 that the '378 Mark had been abandoned.[4]

At best, Counterclaim I frames two equally possible factual scenarios about Island IP's state of mind when it submitted the Declaration to the USPTO in February 2022. Either (1) Island IP *did not know* that the mark had not been used or had been abandoned, in which case the Declaration was not fraudulent, or (2) Island IP *knew* that the mark had not been used or knew that Centennial Bank had abandoned it, in which case a fraud occurred. Where, as here, equally-possible alternative explanations exist, the factual averments in the Counterclaim are "merely consistent with" Island IP's liability, and therefore "stop[] short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U. S. at 678 (quoting *Twombly*, 550 U. S. at 557).

---

[4] The Counterclaim alleges that Centennial Bank foreclosed on the intellectual property in September 2019. ¶13. Island IP acquired the foreclosed intellectual property in June 2021. ¶24. So, Centennial Bank's non-use was, at most, 21 months. The Declaration was filed eight months later, in February 2022, which was still less than three years from the Centennial Bank foreclosure. So, it is not clear that the presumption of abandonment applies.

For all these reasons, Counterclaim I fails to state a plausible claim that the '378 Mark is subject to cancellation on the grounds that Island IP knew that the mark was abandoned when Island IP submitted the Declaration to the USPTO.

Separately, Counterclaim I says that the February 2022 Declaration was false and fraudulent because the specimens of use appended to the Declaration to show bona fide use of the mark were not manufactured by Island IP and were ordered at the last minute by an entity affiliated with Island IP that had a mail drop as its address. ¶49.[5] Even viewing these facts in the light most favorable to Island Rum, they do not plausibly allege fraud on the USPTO. The purpose of the specimen of use is to demonstrate to the USPTO that the mark remains in use. *See* 15 U.S.C. §1058(b)(1)(C). So, the fact that the specimen shows a sale the day before the Declaration is not inherently suspicious; it is arguably the best evidence that the mark remains in active use. Similarly, the fact that the purchaser of the specimen was affiliated with the mark holder does not imply, by itself, fraud or fraudulent intent. Finally, the fact that the mark holder did not manufacture the specimen — or that the specimen was manufactured years ago — does not imply that Island IP is not continuing to use the mark.

---

[5] Paragraph 49 contains several assertions based "upon information and belief." I do not consider those assertions in my analysis because they are not entitled to the assumption of truth.

11

For all these reasons, the Motion to Dismiss Counterclaim I is GRANTED without prejudice to Island Rum seeking leave to file an Amended Counterclaim. *See* SDFL Local Rule 15.1.[6]

B. *Counterclaim II*

Counterclaim II alleges that nine marks currently claimed by Island IP have been abandoned. A trademark is abandoned if the holder of the mark discontinued the bona fide use of the mark with the intent to not resume its use in the reasonably foreseeable future. 11th Cir. Pattern Jury Instruction (Civil) 10.4.

> Because proving the subjective intent of a trademark holder may prove burdensome for a defendant, *see Saratoga Vichy Spring Co. v. Lehman,* 625 F.2d 1037, 1044 (2d Cir.1980) ("intent is always a subjective matter of inference"), the Lanham Act provides two aids for demonstrating intent. First, it provides that "[i]ntent not to resume may be inferred from circumstances." 15 U.S.C. § 1127; *see also Vitaline Corp. v. Gen. Mills, Inc.,* 891 F.2d 273, 275 (Fed.Cir.1989) ("Although abandonment requires both non-use and intent not to resume use of the mark, the element of intent can be established inferentially by the same facts that establish non-use."). Second, it allows a showing of three years of consecutive nonuse to create a rebuttable presumption of intent not to resume use: "[n]onuse for 3 consecutive years shall be prima facie evidence of abandonment." 15 U.S.C. § 1127.

*Cumulus Media, Inc.*, 304 F.3d at 1174 (brackets in original).

Island Rum says the marks were abandoned two ways. The only well-pled, non-conclusory facts to support a finding of abandonment under these theories are:

---

[6] I note that on October 18, 2023, after this Motion to Dismiss was fully briefed, the Federal Circuit held that fraud in a Section 15 affidavit is not a basis to cancel a trademark's registration. *Great Concepts, LLC v. Chutter, Inc.*, 84 F.4th 1014 (Fed. Cir. 2023). Because neither party made this argument, I do not deny the Motion on this basis.

- "On or before July 1, 2019, Island Company permanently shuttered its operations with no intent to resume its operations or use its existing trademarks and service marks." ¶12.

- "Since September 9, 2019, when Centennial Bank purportedly acquired ownership of Island Company's marks via its judgment, Centennial Bank never put the marks into use, never made any sales or rendered any services in connection with the marks, never attempted to license the marks, never attempted to solicit offers to purchase or auction the marks to third-parties, and most significantly allowed all the trademark registrations owned by Island Company that came due for maintenance filings to lapse." ¶16.

The first theory is plausibly alleged. Island Rum asserts Island Company LLC did not intend to use any of its trademarks after July 1, 2019. Mr. Antle was an owner of Island Company LLC and is now an owner of Island Rum. ECF No. 1 ¶¶ 8, 11. Therefore, Island Rum's factual assertion about Island Company's state of mind is entitled to the assumption of truth at this stage of the litigation.[7] And, those facts are sufficient to state a claim for abandonment when viewed in the light most favorable to Island Rum.

It is a close question whether Centennial Bank's non-action, as alleged in Paragraph 16, is enough to imply an intent to not resume using the marks in the reasonably foreseeable future. Intent to abandon is a highly factual inquiry that the Eleventh Circuit says can be inferred from circumstances. When viewed in the light most favorable to Island Rum, the combination of Centennial Bank not using the marks, not trying to license them, not trying to sell them, and allowing some

---

[7] In contrast, in Paragraph 54 Island Rum makes assertions about Centennial Bank's state of mind that are not entitled to the assumption of truth.

13

registrations to expire is sufficient to allege a plausible claim that Centennial Bank abandoned the nine marks.

The Motion to Dismiss Counterclaim II is DENIED.

C. *Counterclaim III*

Counterclaim III relates to registered trademark 4,902,534 (the "Rum X Mark"). Both Island Rum and Island IP claim to own the Rum X Mark. ECF No. 1-5 at 3; ECF No. 39 ¶¶ 20-23.

Island IP has filed trademark application number 97,094,861 ("the '861 Application). ¶¶ 40-41. Counterclaim III asks to cancel the '861 Application on the grounds that (1) granting the registration would cause confusion in the marketplace with the Rum X Mark, and (2) the application contains "knowing, false, material representations of fact" designed to deceive the USPTO. ¶¶ 74, 75. Island IP factually challenges the Court's subject matter jurisdiction to cancel the '861 Application.[8] Island Rum bears the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. *Hogan v. Kerry*, 208 F. Supp. 3d 1288, 1289 (S.D. Fla. 2016) (J. Martinez) (citing *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 103–04 (1998)).

Island Rum brings Counterclaim III under 15 U.S.C. §1119, which says:

> In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action. Decrees and orders shall be certified by the court to the Director, who shall make

---

[8] Neither party requested jurisdictional discovery, nor do the jurisdictional facts appear to be in dispute.

> appropriate entry upon the records of the Patent and Trademark Office, and shall be controlled thereby.

15 U.S.C. §1119. Both parties cite caselaw saying that, despite the lack of any reference to "applications" in Section 1119, federal courts have subject matter jurisdiction to cancel a trademark application "as long as that application is sufficiently similar (such as in sound, look, and meaning) to the registered trademark at issue in the underlying litigation." ECF No. 44 at 19; ECF No. 46 at 11 (both citing *D.B.C. Corp. v. Nucita Venezolana, C.A.*, 464 F. Supp. 3d 1323, 1332 (S.D. Fla. 2020) (J. Moreno). Notably, neither party has cited a federal appellate decision recognizing a trial court's authority to expand its jurisdiction under Section 1119 to include trademark applications.

Island IP says the '861 Application is for a word mark but the Rum X Mark is a design mark.[9] It then argues that categorically a word mark and a design mark can never be sufficiently similar to create subject matter jurisdiction for a Section 1119 claim. ECF No. 44 at 19 (citing *U.S. All Star Fed'n, Inc. v. Open Cheer & Dance Championship Series, LLC*, No. 6:21-cv-2135-WWB-DCI, 2023 WL 2633338,

---

[9] Counterclaim III alleges, "the ['861] Application includes the same words 'Island Company' and 'Island Company Rum Simply the Smoothest' as in the Rum X Mark, and the two marks are in the same goods category: rum." ¶41. Island IP responds that the '861 Application is for a word mark, not a design mark. ECF No. 44 at 19 ("The '861 Application is for the ISLAND COMPANY trademark for rum and [the Rum X Mark is a] design mark for rum."). Island Rum does not contest that one mark is a word mark and one is a design mark. ECF No. 46 at 13 ("In limited circumstances, the distinction between a word mark and a design mark can be a basis for finding a lack of sufficient nexus, but that is not a concept that should be applied here.").

at *7 (M.D. Fla. Mar. 24, 2023)). Island Rum disputes that a categorical rule exists. I need not resolve whether a categorical rule exists because, as I now explain, Section 1119 does not confer subject matter jurisdiction to cancel a trademark application.

"[W]hen the statute's language is plain, the sole function of the courts ... is to enforce it according to its terms." *See Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) *cited in Fuerst v. Hous. Auth. of City of Atlanta, Georgia*, 38 F.4th 860, 869 (11th Cir. 2022). For the reasons stated in *U.S. All Star Fed'n Inc.*, interpreting Section 1119 to allow a federal court to cancel a trademark application is inconsistent with the unambiguous language of the statute:

> Section 1119 gives courts authority to take certain action, including the ability to "determine the right to registration" or "rectify the register," "[i]n any action involving a registered mark[.]" 15 U.S.C. § 1119. However, this broad grant of discretion applies only to the "registrations" of a party to the action. *Id.* Because an application for registration is not a registration, it appears that the unambiguous language of the statute forecloses this Court's ability to review and adjudicate applications for registration, regardless of their connection to the registered mark involved in the litigation.

2023 WL 2633338, at *4 (brackets in original). I adopt this analysis.

Adherence to textualism is particularly apt in a jurisdictional context because of potential separation of powers implications. The Supreme Court has cautioned against federal courts interpreting statutes to expand their own jurisdiction. "Because the authority 'to set the limits of federal jurisdiction' lies with Congress under Art. III, federal courts must 'carefully guard[ ]' against expanding their own jurisdiction through 'judicial interpretation.'" *Gonzalez v. United States Ctr. for SafeSport*, 374 F. Supp. 3d 1284, 1289–90 (S.D. Fla. 2019) (J. Scola) (citing and

16

quoting *Stoneridge Inv. Ps., LLC v. Scientific-Atlanta*, 552 U.S. 148, 164-65 (2008) (citation omitted)) (brackets in citing decision). "[T]he jurisdiction Congress confers may not 'be expanded by judicial decree.'" *Badgerow v. Walters*, 596 U.S. 1, 11, 142 S. Ct. 1310, 1318, 212 L. Ed. 2d 355 (2022) (citation omitted).

For all these reasons, I respectfully disagree with the Courts that have recognized subject matter jurisdiction under Section 1119 for trademark applications. Counterclaim III is DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction but without leave to amend.

### III.   AFFIRMATIVE DEFENSES

A. *Affirmative Defense 13*

Affirmative Defense 13 says, in full, "Plaintiff lacks standing to bring these claims because it does not possess valid United States trademark rights in the alleged trademarks." It is not clear whether Defendants are arguing a lack of Article III standing or a lack of so-called statutory standing (i.e., that Island IP cannot prove a necessary element of a trademark infringement claim). *See Palm Beach Concours, LLC v. SuperCar Wk. Inc.*, No. 22-80888-CV-DMM, 2022 WL 18034428, at *5 (S.D. Fla. Dec. 30, 2022) (J. Reinhart) (discussing distinction), *report and recommendation adopted*, No. 22-80888-CV, 2023 WL 249937 (S.D. Fla. Jan. 18, 2023) (J. Middlebrooks). The former argument implicates the Court's subject matter jurisdiction; the latter asserts that Island IP cannot state a claim upon which relief can be granted. *Id.* Either way, lack of standing is not an affirmative defense. *See, e.g, Naeh Media Grp. LLC v. City of Lauderhill, Fla.*, No. 21-CV-61270, 2021 WL 8263906, at *2 (S.D. Fla. Dec. 1, 2021) (J. Altman); *Bernal v. All Am. Inv. Realty, Inc.*,

17

No. 05-60956-CIV, 2006 WL 8431426, at *2 (S.D. Fla. Jan. 17, 2006) (J. Seitz). Instead of being stricken, Defendants' lack-of-standing argument will be treated as a denial. *Ramnarine, supra,* at *4.

B. *Affirmative Defense 14*

Affirmative Defense 14 says, in full, "The Complaint is barred, in whole or in part, by the failure of Plaintiff to join indispensable parties as defendants in this action, specifically the domain name registrants." This affirmative defense as pled provides sufficient notice of the issue to be litigated. Island IP can obtain further details through discovery.

C. *Affirmative Defense 17*

Affirmative Defense 17 says, in full, "Plaintiff lacks standing to bring its claim for conversion because it does not own several of the social media accounts and domain names, as identified by the Purchase Agreement executed between Plaintiff and Centennial Bank." For the same reasons as Affirmative Defense 13, this defense will not be stricken, but instead will be treated as a denial.

WHEREFORE, it is ORDERED that:

1. Counterclaim I is DISMISSED WITHOUT PREJUDICE.

2. The request to dismiss Counterclaim II is DENIED.

3. Counterclaim III is DISMISSED WITHOUT PREJUDICE.

4. The request to strike affirmative defenses 13, 14, and 17 is DENIED.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 8th day of November 2023.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE