**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 9:22-cv-81293-BER**

ISLAND IP ACQUISITIONS, LLC,

       Plaintiff,

vs.

SPENCER ANTLE,
ISLAND COMPANY LLC, and
ISLAND COMPANY RUM, INC.,

      Defendants.

_____/

**PLAINTIFF ISLAND IP ACQUISITIONS, LLC'S**
**MOTION FOR DISCOVERY SANCTIONS**
**<u>AND INCORPORATED MEMORANDUM OF LAW</u>**

Plaintiff Island IP Acquisitions, LLC, pursuant to Fed. R. Civ. P. 26(g) and 37, and S.D. Fla. L.R. 7.1, hereby moves for the entry of an Order awarding sanctions to Plaintiff and against Defendants. Plaintiff does not bring this Motion lightly, but after significant discovery violations by Defendants. Plaintiff seeks sanctions in the form of: (1) striking Defendants' pleadings for Defendants' repeated, willful, and contumacious disregard for the rules of this Court and this Court's Orders by failing to produce relevant materials in their possession, custody, and control, or at a minimum, issuing an adverse inference regarding Defendants' destruction of evidence; (2) compensation to Plaintiff for the fees and costs incurred in litigating and seeking to obtain discovery that Defendants have improperly withheld, destroyed, or failed to preserve; and (3) compensation to Plaintiff for the fees and costs incurred litigating Defendants' discovery objections to requests that they eventually responded with "no documents."

In sum, Defendants have failed to produce clearly relevant evidence in their possession, custody, or control that undercuts their position on key issues in this case (such as correspondence related to Island Company's use of the marks at issue herein *after* the purported abandonment claimed by Defendants). Further, Defendant Antle has specifically admitted that: (a) he destroyed documents after knowing this litigation would likely arise; (b) he continued destroying documents after this litigation commenced; and (c) he failed to meaningfully review known repositories of information to search for responsive documents (such as email accounts for Island Company and email accounts to which those accounts routed after he lost Island Company to the foreclosure action). In addition, Defendants provided responses of "no documents" to document requests to which they previously asserted objections and asserted they were withholding documents, in direct violation of the Rules and this Court's Standing Discovery Order declaring such conduct subject to mandatory sanctions.

For these reasons, and those set forth in detail below, this Court should sanction Defendants by striking their pleadings or, at a minimum, issuing an adverse inference, and awarding Plaintiff its fees and costs as described herein.

## Summary of Arguments

Defendants' failure to comply with their discovery obligations is evident through a simple review of their scant document production, totaling only 928 pages, many of which are public foreclosure action documents and loan documents. Indeed, Defendants' failure to comply has been confirmed by documents that Plaintiff independently obtained, and by Mr. Antle's admissions at

his deposition.[1] Defendants knowingly destroyed or withheld relevant evidence including critical social media evidence, emails, and other documents that completely undercut their claims they "abandoned" Island Company intellectual property on or before July 1, 2019, and that they separately own the Rum X Mark.

Since at least November 22, 2021, upon receipt of Plaintiff's correspondence demanding Mr. Antle stop his infringement of Plaintiff's rights in the foreclosed intellectual property, which Plaintiff purchased from Centennial Bank (*see* ECF No. 1, ¶¶ 43-44 & 1-15; *see also* Ex. 2 (Nov. 2021 letter & Antle Response), Mr. Antle and his counsel have known of the strong likelihood of litigation. In fact, Mr. Antle took various steps in anticipation of litigation including alleged attempts to "separate" portions of the Island Company business that dealt with the Rum, after receiving Plaintiff's correspondence. *See, e.g.,* ECF No. 139(sealed), 135(public) Plaintiff's Statement of Material Facts & Response to Defendants' Statement of Material Facts as to Ownership of the Rum X Mark & 135-5; 135-6; 135-7; *see also* Ex. 3 (July DBPR emails).

As Plaintiff discovered through public records requests sent to the Florida Department of Business and Professional Regulation ("DBPR"), Mr. Antle communicated with the DBPR regarding a "Business Name Change Request" for the liquor licenses that were held in the name of Island Company at least *five times* since December 2021, including *after* Plaintiff commenced litigation in March 2022 seeking to prevent Defendants' continued infringement by moving to enforce the state court foreclosure judgment. *See id.; see also* ECF 1-16 (State Court Motion to Intervene). Defendants failed to produce a single letter, e-mail, or any document whatsoever reflecting Antle's numerous communications with the DBPR in December 2021 and the months that followed.

Similarly, while Mr. Antle produced a handful of e-mails related to his negotiations with Plaintiff, certain key e-mails that directly contradict Defendants' material assertions in this case were omitted from Defendants' productions. While Plaintiff was in possession of these, and

---

[1] Plaintiff also raised these concerns with the Court at the April 17 discovery hearing. *See* Ex. 1, April 17 Hr. Transcript, 24:20-26:24. The Court instructed Plaintiff that at the deposition of Mr. Antle (individually and as corporate representative of the Defendant entities), Plaintiff's counsel could "inquire of Mr. Antle…as to the electronic searches that were done, whether they looked or not, and depending on his answers if you believe you're entitled to a remedy at that point, you can certainly bring that back before the court." *Id.*, 27:5-10. Plaintiff has done exactly that.

therefore produced them, Plaintiff has no way of knowing what *other* relevant communications with third-parties were improperly withheld and/or improperly deleted. For example, Plaintiff has independently uncovered investment solicitation materials on a crowd-funding website – wefunder.com – showing that Island Company Rum is being marketed and advertised as part of the Island Company business. *See* ECF 135-11. These materials include specific reference to Island Company's success as a retail brand and otherwise, and falsely associate with the Island Company marks (other than the Rum X logo). This directly contradicts many of Defendants' arguments on summary judgment, including that they abandoned these marks, and that they separately own the Rum X logo. *Compare id. with* ECF 116 & 117.

As Mr. Antle testified during his deposition, he receives thousands of emails on a weekly basis in his various e-mail accounts, knew of his duty to preserve this correspondence, deleted emails after receipt of the cease-and-desist letter, and continued to do so after this litigation commenced. He also testified that he knowingly altered and deleted Island Company social media posts. Plaintiff's infringement allegations in this case, in its cease-and-desist letter, and in its motion filed in the foreclosure action, have centered on Defendants' conduct on various social media platforms, as well as Defendants' refusal to turn over access to the Island Company domains and social media to Plaintiff as its rightful owner. *See generally* ECF No. 1, 1-16, 109 (Joint Notice). In other words, there is no question that the Island Company social media accounts controlled by Mr. Antle fit squarely within the definition of relevant evidence. And there is no question Mr. Antle failed to produce, and destroyed, relevant evidence pertaining to Island Company social media.

Finally, after Defendants objected to numerous document requests for months, and asserted they were withholding responsive documents on the basis of those objections, and only after this Court <u>twice</u> ordered Defendants to amend their responses, they eventually stated in their fourth round of objections and responses—served the week before Mr. Antle's deposition—that they actually had no responsive documents to several of the document requests that they nonetheless took up the Court's time and Plaintiff's time litigating.

Defendants' improper withholding of documents, document destruction, and other discovery violations defy this Court's Orders and the Federal Rules of Civil Procedure. For these reasons, and as detailed further below, this Court should enter sanctions against Defendants.

I. **Relevant Factual and Procedural Background**

  A. **Defendants' History of Stonewalling Discovery in Violation of Court Orders**

   Plaintiff served Requests for Production to Defendants on December 19, 2023 seeking key documents pertaining to the Summary Judgment Issues.[2] Defendants served their initial Objections and Responses on January 18, 2024, followed by Amended Responses and Objections ("Feb. 7 RFP Responses") after the parties conferred regarding several deficiencies in the initial responses. *See* Composite Ex. 4 (Dec. 19 Requests; Feb. 7, March 11 & April 29 Responses).

   After the March 1, 2024 hearing on Plaintiff's motion to compel, which resulted in an Order granting Plaintiff's motion in relevant part, Defendants served Second Amended Objections and Responses to Plaintiff's RFPs (the "March 11 RFP Responses").[3] ECF Nos. 97, 102-3; Ex. 4. But rather than complying with the Order requiring responses "limited to the marks at issue," Defendants unilaterally modified this limitation by defining a particular subset of marks as the "SJ Marks" and asserted their responses were all subject to this unilateral limitation. *See* ECF Nos. 102 at 5-7 & 102-3. This was a material violation of the Court's Order.

   The March 11 RFP Responses were followed by a 30-page production consisting of photos of four of Defendants' infringing products, screenshots of four incomplete posts from the @IslandCompanyRum Instagram account, and 20 images printed from an unspecified source, which Defendants' counsel later confirmed were apparent re-posts from the Island Company Instagram page. There were no dates accompanying the posts, nor any other specific identifying information. Based on Defendants' lacking Responses, Plaintiff was forced to file another motion to compel.

   On March 27, 2024, the Court held a hearing on Plaintiff's motion to compel better discovery responses, and to compel Mr. Antle's deposition.[4] The Court issued an Order staying

---

[2] Plaintiff adopts the definition and meaning of "Summary Judgment Issues" from the Joint Stipulation.  ECF No. 78 & 79.

[3] In particular, Defendants responded that "phrases" like the "Quit your job" mark, were not "trademarks … in any way authorized for use" and were withholding several categories of documents on those grounds.   Defendants were ordered to provide responses to the RFPs, "limited to the marks at issue".  ECF No. 97.

[4] After waiting for months for Mr. Antle to provide deposition dates, Plaintiff scheduled Mr. Antle's deposition for March 19, but Plaintiff was forced to cancel at the last minute due to Mr. Antle's representation that he was too ill to attend in person. Plaintiff was also forced to cancel the

the proceedings and requiring the parties to file a Joint Notice clarifying the marks at issue in order to resolve Defendants' assertions that the marks at issue were too vague for them to sufficiently respond as to anything other than the unilaterally defined "SJ marks." *See* Ex. 5 (March 27 Hr. Transcript) & ECF No. 107.

After the parties submitted the Joint Notice, the Court held the continued hearing on Plaintiff's Motion to Compel, granting the Motion and stating in relevant part:

> No later than 4/29/2024, Defendants shall serve amended responses to Requests for Admission and Requests for Production to clarify whether their responses correspond with the marks identified in ECF No. [109]. Additionally, Defendants shall clarify which Defendant(s) are providing each response. Any additional documents produced in connection with the amended responses to Requests for Production shall also be served by the same date. To the extent that the Requests for Production seek documents regarding the Rum X mark, Defendants are not required to produce 'any and all documents' but rather a representative sample.

*See* ECF No. 113.

On April 29, 2024, Defendants served their Third Amended Responses (the "April 29 RFP Responses"). *See* Ex. 4 (April 29 RFP Responses). These responses also violate the Court's Orders. Defendants asserted in response to several RFPs that they did not have responsive documents, <u>despite previously objecting to the same RFPs and asserting that documents were being withheld on the basis of those objections in the Feb. 7 RFP Responses, and despite limiting their March 11 RFP Responses to a subset of marks</u>. *See* Ex. 4, April 29 RFP Responses, #s 62-68; 85; 87; 91.

Also problematic, Defendants provided "revised" responses to several other Requests, responding as follows:

> Pursuant to Plaintiff's identification of relevant intellectual property [DE 109] and the Court's Order [DE 113], and to the extent not already produced, consistent with the representation that Rum Co. does use the "Quit Your Job Buy A Ticket Get A Tan Fall In Love Never Return" mark, Rum Co. will produce documents pertaining to the "Quit Your Job Buy A Ticket Get A Tan Fall In Love Never Return" mark proportional to the needs of the case; there are no other responsive documents. As to Island Company and as to Antle, other than documents being produced from social media or islandcompany.com web domain, none.

*See* Ex. 4, April 29 RFP Responses, #49, followed by responses to several other requests

---

re-scheduled March 26 deposition for the same reason, and Mr. Antle refused to agree to another in-person deposition date.  ECF No. 102.

as "See Response to Request 49" or "None other than those responsive to Request 49". *Id.*, #s 50-61; 63; 69; 75; 81; 86. While the April 17 Order permitted Defendants to produce "a representative sample" of documents in response to RFPs seeking "documents regarding the Rum X mark", the Order did not permit Defendants to do so as to any other marks. *See* ECF No. 113; *see also* Ex. 1, April 17 Hr. Transcript, 31:1-33:4. Therefore, the additional limitation Defendants have extended to the "Quit Your Job …" mark, does not comport with the April 17 Order.

Also in violation of the April 17 Order, no document production accompanied the April 29 RFP Responses. Instead, just _three days_ before Mr. Antle's deposition, on May 6, 2024, Defendants served a production of 13 pages, consisting of: 1 page with the words "INTENTIONALLY OMITTED" centered on it; 4 pages with posts appearing in 2022 from the @islandcompanyrum Instagram page; 6 pages that appear to be printed pages from random portions of the islandcompanyrum.com website, and 2 undated images that Plaintiff assumes represent the "documents being produced from …[the] islandcompany.com web domain." But given the lack of any other social media documents in the production, Defendants' vague and non-committal responses stating "[a]s to Island Company and as to Antle, other than documents being produced from social media or islandcompany.com web domain, none[]", essentially state "no documents." *See, e.g.,* Ex. 4, April 29 RFP Responses, #49; #57-59.

In total, Defendants' entire production of documents for the Summary Judgment Issues consisted of just **53** pages.[5]

### B. Defendants Improperly Deleted Material from their Social Media Accounts

In the meantime, Plaintiff notified Defendant of its serious concerns: (1) that Mr. Antle had suddenly deleted his Island Company Instagram page, a key source of information for Plaintiff's summary judgment arguments (*see* Ex. 6 (April emails regarding social media); *see also, e.g.*, ECF No. 120, ¶¶ 44-49; ECF No. 135, ¶ 14)) and (2) that critical documents were being withheld from discovery. *See* Ex. 6 & Ex. 7 (April 8 letter).

Defendants dismissed Plaintiff's concerns. They maintained that the Instagram account had simply been switched to "Private." But, fearing that Mr. Antle had permanently deleted key social

---

[5] Together with the productions made in response to the First Requests of Products, Defendants produced a total of 928 pages.

media evidence, and that relevant evidence would not be preserved, Plaintiff again contacted Defendants including a screenshot of the broken link for the Instagram page to show the account had not simply been switched to private. *See* Ex. 6, p. 2-3. Nonetheless, Defendants continued to assert Plaintiff's concerns were not valid or urgent and did not require attention. In one email, Defendants noted as follows:

> … a ten second Google search indicates that disabling public access is a basic feature on Instagram. Further, given the multiple years of access you have had, and the records you have already gathered and produced in this case going back to 2015, I have a hard time seeing how you a prejudiced in any way by the disabling of public access.

*See id.*, p. 2. Plaintiff continued to press the importance of obtaining activity logs and audit trails to determine any alterations that had been made to the social media account and reiterated the non-existence of the Instagram page. *See id.* However, it was not until April 28, almost four weeks after Plaintiff initially raised the matter, that Defendants acknowledged the account had been "deactivated", responding:

> …we have confirmed that as we previously reported, you can deactivate an Instagram account, and subsequently re-activate, without the content being deleted. … The Island Company Instagram account was deactivated, not deleted. Unfortunately, deactivation does not show up in Account History. However, to confirm this, *we had the account turned on temporarily, and all prior posts were present*. Please see the attached dated screenshot from today showing prior posts (the first being in 2022) of this account.

*See* Ex. 8 (Defendants' April 28 email, emphasis added).

But Defendants' "screenshot" showed exactly the opposite. The number of posts on April 24 when Mr. Antle *actually* reactivated the Instagram page (4 days before counsel's email) was 2,095 (as displayed at the top of the page immediately below the word: "islandcompany" and shown below).[6]

---

[6] After discovering the newly-unavailable Instagram account, Plaintiff's counsel checked almost daily for the reappearance of the account, and on April 24, it was back online. This image is an excerpt from counsel's print-out of the Instagram page on that date. It was printed without "header and footer," so while the date does not appear in the upper left-hand corner, Plaintiff produced the document with its metadata, which shows it was created on April 24, 2024 @ 11:12:36 pm. *See* Ex. 9 (ISLANDIP0024093).

*April 24, 2024 screen print of @islandcompany Instagram page excerpt (See Ex. 9)*



The number of posts in Defendants' counsel's April 28 screenshot is 2,070. *See* Ex. 8.

*Defendants' April 28, 2024 email @12:08 pm with screenshot attachment*



*See id.* Then, the very same day of Defendants' email representing no posts had been deleted (despite the obvious change in the number of posts), Plaintiff's counsel revisited the Instagram page. It reflected yet another deletion to the posts in the few hours since Defendants' email. *See* Ex. 10 (April 28, 2024 screen print at 6:41 p.m. showing 2,069 posts).

*April 28, 2024 @6:41 pm screen print (See Ex. 10)*



Further, as no audit trail accompanied the "proof," Plaintiff can only rely on simple math and the obvious differences appearing on the face of the Instagram account. Defendants' assertion

8

in their April correspondence of effectively "no harm, no foul" because of the purported availability of the social media materials prior to the deactivation, is meritless. While Plaintiff was able to "capture" the social media account pages that were available on the specific dates of those captures,[7] Plaintiff has no way of knowing what relevant posts existed prior to those captures, nor does it know what "evidence" may arise in the future because of subsequent alterations that conflict with its web captures. Nor could it readily ascertain any particular changes without undertaking a painstaking review and comparison of each post from each account.

Given that this pending litigation has not deterred Mr. Antle from "deactivating" or deleting evidence from the Instagram account–at the very same time his counsel was in active discussions with Plaintiff regarding this very issue– Plaintiff has no doubt that the evidence it was able to obtain on its own is an incomplete depiction of the activity that actually occurred after July 1, 2019. These are key facts for this case, and Defendants have hidden or destroyed those facts.

### C. Mr. Antle's DBPR Communications Confirm Defendants' Failure to Properly Respond to Plaintiff's Discovery and to Comply with this Court's Orders

On December 10, 2021, Mr. Antle submitted a "Business Name Change Request" to the DBPR via its online platform. *See* ECF No. 135-5. This submission occurred one week after Mr. Antle responded to Plaintiff's cease-and-desist letter that began the parties' dispute, in which he claimed he individually owned the Island Company intellectual property that Plaintiff had recently purchased. Specifically, with regard to the Rum-related licenses that were issued to, and held in the name of Island Company, an "Application Summary" was generated which includes the following in relevant part:

Organization Name: RUM COMPANY LLC
Business Name: ISLAND COMPANY
New Business Name: ISLAND COMPANY RUM INC

*See* ECF No. 135 ¶24 & 135-5.[8] Less than three months later, on March 7, 2022, Plaintiff filed its Motion to Intervene in the foreclosure action, seeking to enforce the foreclosure sale of the Island

---

[7] *See* ECF No. 120-6 & 120-8 (Price & McCustian Affidavits).

[8] In the e-mail address section, the email belonging to the former CFO of Island Company, Denise Costantino – denise@islandcompany.com is listed.  Antle Dep. at 30:10-22, 52:4-5, 89:11-14; Costantino Dep. at 32:1-5. In the "License Related Addresses" section, it includes Island Company, LLC's address of 312 Clematis Street, #401, West Palm Beach, FL 33401.

Company intellectual property. *See* ECF No. 1-16. At that point, Defendants were indisputably on notice that litigation had commenced regarding Defendants' improper use of the marks.

Then, on March 23, 2022, Mr. Antle communicated with the DBPR again from his email account: islandcompanyemails@gmail.com, regarding additional outstanding information the DBPR sought to effectuate the license name change. *See* ECF 135, ¶24 & 135-7. Two days later, on Friday, March 25, Defendants filed their opposition to Plaintiff's motion seeking to intervene in the foreclosure action. *See* ECF 1-9. And on Monday, March 28, Mr. Antle sent another email to the DBPR regarding the application. *See* ECF 135-5.

<u>Not one</u> communication with the DBPR was produced by Defendants in this case, despite their clear importance to the Summary Judgment Issues (*see, e.g.*, ECF No. 135, ¶¶ 24-25) and their responsiveness to discovery requests (to which Defendants continue to maintain they have no responsive documents).[9] Among other critical issues, these documents directly contradict Defendants' defenses and counterclaims asserting that Island Company and Mr. Antle ceased conducting Island Company business and "abandoned" those marks on or before July 1, 2019. *See, e.g.*, ECF 120; ECF 135, ¶ 6. Likewise, these documents contradict Defendants' claims that Island Company Rum, Inc. is the owner of the Rum X Mark, as Island Company itself conducted the rum business until at least March 2022. *See, e.g.*, ECF No. 135, ¶¶ 6; 24-27; ECF No. 134.

Nonetheless, despite the DBPR's correspondence with Mr. Antle using the islandcompanyemails@gmail.com address, he testified that he has not preserved emails from that account (or any other relevant email accounts), and did not search this email account for responsive emails. *See, e.g,* Antle Dep., 18:8-26:9. Mr. Antle further testified – despite initially denying that he had access to any @islandcompany.com emails after July 2019 – that he had also routed his spencer@islandcompany.com and denise@islandcompany.com emails to that same account since July 2019. *Id.*, at 21:3-25:25; 29:25-30:22.

Based on the circumstances and Mr. Antle's testimony, the documents produced by Defendants, and the documents obtained independently from the DBPR, it is clear that Defendants

---

[9] *See, e.g.*, Ex. 4, April 29 RFP Responses at #89 (responding "None" to "[a]ll Documents concerning You, Your co-defendants, or any person or entity affiliated with Spencer Antle's, application for, renewal of, maintenance of, or transfer of any license or other authorization, granted by any governmental authority, that grants any right to sell, offer for sale, import, distribute, or manufacture any goods or services under any Island Company Marks").

have failed to properly respond to Plaintiff's document requests and have failed to comply with this Court's Orders.

### D. Mr. Antle's Testimony Confirms He Withheld and Deleted Key Evidence

#### 1. *Mr. Antle Admits to Permanently Deleting Social Media Content.*

Notwithstanding Defendants' counsel's representations that Mr. Antle had not deleted any posts, Mr. Antle admitted that he did in fact make numerous alterations to his social media since the filing of this lawsuit, with no way of recovering what has been removed. Specifically, when asked about whether he deleted any content, Mr. Antle first vaguely responded that he had not done so, then vaguely responded that he did delete content but that same content was visible on the related @islandcompanyrum Instagram page. *See* ECF 124-37, Deposition Transcript of Spencer Antle dated May 9, 2024 ("Antle Dep."); Ex. 11 (Dep. Excerpts, p.1) at 304:15-305:23.

But when further pressed for information on the content that was deleted, Mr. Antle changed his testimony completely. Ex. 11 at p.2 (*see, e.g.,* 307:15-23 ("Q. Can you, sitting here now, testify for a fact that in connection with the Island Company Instagram account, no information that was posted on that account has been deleted and not reused elsewhere? A. No, I can't. I can't say anything. I have no idea what's been changed or modified over the course of time. Q. Is it actually likely that information has, in fact, been deleted? A. Sure. It's been deleted from mine and my site, the rum site, all sorts of stuff. Some of the stuff's just bad.")). Mr. Antle also testified that he controlled all of the social media pages.[10] And, as confirmed by his own testimony, Mr. Antle deleted social media posts relevant to this case.

#### 2. *Mr. Antle Admits to Deleting or Failing to Search for Responsive Documents.*

Similarly, several key e-mails contradicting Defendants' allegations in this case were absent from Defendants' productions, including, but not limited to, e-mails to Plaintiff dated April 29, 2020, May 4, 2020, and October 16, 2020. The April and May 2020 emails provided Plaintiff

---

[10] He testified that the only exception was that there were "admin rights" for the Island Company Facebook account he apparently had not figured out how to adjust; the Instagram posts would automatically copy over to Facebook but that had not been working. Antle Dep., 309:14-310:10. Tellingly, on the Island Company Facebook page, Plaintiff discovered several uses of the Island Company marks, that do not appear on other Island Company accessible social media pages, entirely inconsistent with Defendants' allegations regarding their "abandonment" of the marks on or before July 1, 2019. *See* DE 135, ¶14.

with an extensive spreadsheet of Island Company trademarks, as well as Island Company URLs, inclusive of the social media accounts Mr. Antle refuses to turn over access to (e.g., Instagram and Facebook accounts), and the Rum X Mark. ECF 124. The October 2020 correspondence includes a detailed cover letter and proposal regarding Antle's employment with Plaintiff's business venture, and the possibilities for the growth and expansion of the Island Company brand. *Id.*

Not only do these documents directly contradict Defendants' allegations in their counterclaim that Antle advised Plaintiff relaunching the Island Company brand "could not be done," (ECF 86, ¶20), more critically, they demonstrate Mr. Antle's clear intent to resume use of the Island Company marks long after July 1, 2019, as well as his representations that the Island Company brand and associated marks were valid – key issues for summary judgment. *See* ECF 120/124; 134/135; 138/139. If Defendants had undertaken their discovery efforts in good faith, they would have produced these materials, but they did not – either due to Defendants' stonewalling tactics or because the documents were improperly deleted.[11]

When asked about his efforts to preserve e-mails from his numerous email accounts, Mr. Antle testified he did not search for responsive documents because he had already disposed of them. Antle Dep. at 21:20-29:24; 314:8-315:17, 315:23-316:2, 316:12-21. He testified he always deleted his emails, even after this case was filed, because of the volume, and all of it was "trash" or "junk". Antle Dep. at 23:2-24:20; 321:19-322:24, 323:21-324:3.

Mr. Antle's testimony that the emails were all junk is not plausible. At least three significant accounts from Island Company auto-forward to islandcompanyemails@gmail.com, including his own email: spencerantle@islandcompany.com; the former CFO email: denise@islandcompany.com[12] and webmaster@islandcompany.com. Additionally, Antle's

---

[11] Mr. Antle tried to distance himself from having shared these details regarding the Island Company business, despite his own comments on the documents. When confronted with his own comments, he eventually testified: "Q. Did you put those comments in this spreadsheet? A. Looks like some of them, but I don't -- yeah, it looks like some of the stuff is mine." Antle Dep. at 206:10-13; *see also* 209:12-14 ("Q. The comments that are included were put there by you so you recognize, at least, a few? A. Yeah."). Likewise, with respect to the October 2020 proposal, he testified he did not prepare it, then eventually admitted he sent the email and proposal. *Id.* at 248:11-252:10.

[12] When asked about whether he had access to the email account: denise@islandcompany.com, Mr. Antle eventually admitted that those emails also auto forward to the account, islandcompanyemails@gmail.com. *See* Ex. 11, p. 3 (Antle Dep. at 29:25-30:22).

communications with the DBPR regarding the attempted name change are a key evidentiary matter in the pending motions for summary judgment (*see, e.g.,* ECF Nos. 120/124, 134/135, 138/139). And, even after repeatedly describing the islandcompanyemails@gmail.com as containing "junk," Mr. Antle appeared to later acknowledge during his deposition that he *does use* the email account for more than "junk," and his counsel appeared to confirm knowledge of the irretrievable e-mails and the improper procedure Mr. Antle followed while under a duty to preserve this evidence. *See* Ex. 11, p. 4 (Antle Dep. at 322:7-323:25).

Thus, according to Mr. Antle, he has consistently deleted e-mails from all his accounts, which have included key documents relevant to the summary judgment issues, and as he later acknowledged, actually included "so many hard files that are passing between [him] and around the world …"[13] that cannot be recovered. Antle Dep. at 21:20-29:24, 322:7-323:6.

### E. Plaintiff Discovered Additional Documents Withheld from Production After the Summary Judgment Deadline, Again Confirming Defendant's Failure to Properly Respond to Discovery

Finally, Plaintiff recently discovered *additional* significant evidence withheld by Defendants. Since at least March 4, 2024, Defendant Island Company Rum, Inc. has been preparing to obtain additional investors by advertising and marketing its company on a website called wefunder.com. *See* ECF No. 135-11 & Ex. 12 (@islandcompanyrum Instagram March 4, 2024 post). As these materials show, Island Company Rum is being marketed and advertised as part of the same business as Island Company, and falsely associating with the Island Company marks (not simply the Rum X mark) – a key evidentiary matter as argued in Plaintiff's summary judgment briefing. *See*, *e.g.*, 135-11 at ISLANDIP0024105 ("Island Company is well-known as a 5-star luxury resort lifestyle brand already respected worldwide."); *see also id.* at ISLANDIP0024124 & ISLANDIP0024117 (WeFunder materials with quotes and write-up acclaiming Island Company, the lifestyle brand and clothing boutique).

It appears these materials were not <u>publicly</u> available until right after the May 31 deadline

---

[13] To make matters worse, Mr. Antle subsequently attempted to change via "errata" some of these admissions and even certain of counsel's questions to reflect purported searches or excuses for non-searches that Mr. Antle never testified to himself at his deposition.  These errata changes are the subject of a separate motion.  ECF No. 142.

for the parties' summary judgment motions. During the first week of June, two individuals who appear under the Island Company Rum "Our Team" header in the WeFunder materials, posted a link to the materials on their LinkedIn pages.[14]

In any event, there is no question that Mr. Antle has had possession, custody, or control of these materials and the information contained therein since at least March 4, 2024.[15] In other words, at the time of Defendants' March 11 RFP Responses, April 29 RFP Responses, and May 9 deposition, Mr. Antle had documents and information relating to the crowd funding initiative that were indisputably responsive to several RFPs and other pending discovery, yet responded that he had no such documents or simply failed to produce them.

Altogether, Defendants' conduct demonstrates a willful disregard for their discovery obligations in these proceedings and a willful disregard of, and failure to obey this Court's Orders. Sanctions should be awarded under each of the grounds discussed below.

## II.   Memorandum Of Law

### A.  Legal Standard

#### 1.  Sanctions Under Rules 37 and 41

Under Rule 37(b), the Court may impose substantive sanctions when a party does not obey a Court Order to provide discovery. Specifically, Rule 37(b) provides that if a party fails to obey a discovery Order, the Court may impose the following sanctions, including:

(i)     directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii)    prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii)   striking pleadings in whole or in part;

(iv)    staying further proceedings until the order is obeyed;

(v)     dismissing the action or proceeding in whole or in part;

(vi)    rendering a default judgment against the disobedient party; or

---

[14] *See* Ex. 13 (LinkedIn pages with links to WeFunder/islandcompanyrum site).

[15] The materials consist of over 40 pages of carefully crafted images, write-ups, video clips, interview-style articles, details and information on Island Company's full history, and information on various products Island Company Rum apparently has in development including products to be marketed under the "Island Company" (only) name. These materials would have taken significant time to draft and develop, and could not have simply been prepared overnight after the summary judgment briefs were due. Further, the @islandcompanyrum Instagram page announced the upcoming release of the materials since at least March 4, 2024. *See* Ex. 12 (March 4, 2024 post stating in relevant part "Watch out for our million $ crowdfund raise on WeFunder any day now!").

Case 9:22-cv-81293-BER  Document 155  Entered on FLSD Docket 07/23/2024  Page 16 of 22

(vii)     treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed R. Civ. P. 37(b)(2)(A).

This Court has broad discretion in determining how to impose sanctions under Rule 37. *See Malautea v. Suzuki Motor Co*., 987 F.2d 1536, 1542 (11th Cir.)*, cert. denied*, 510 U.S. 863 (1993). In awarding sanctions under Rule 37(c) for failure to disclose, the Court may award fees, inform the jury of the failure to disclose, or order any of the sanctions included in Rule 37(b)(2). *Id.* In awarding sanctions under Rule 37(d) for failure to respond, the Court may likewise award fees or order the sanctions in Rule 37(b)(2).

"The burden of proof for Rule 37 sanctions is a preponderance of the evidence." *Wyndham Vacation Ownership, Inc. v. Am. Consumer Credit, LLC*, 18-80095-CIV, 2019 WL 4748328, at *4 (S.D. Fla. Aug. 30, 2019) (citing *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 777 (7th Cir. 2016)), *report and recommendation adopted*, 18-CIV-80095-RAR, 2019 WL 4748322 (S.D. Fla. Sept. 16, 2019); *see also Organo Gold Int'l, Inc. v. Aussie Rules Marine Services, Ltd.*, 9:18-CV-80758, 2019 WL 7371831, at *3 (S.D. Fla. Sept. 20, 2019) (same). "Rule 37 sanctions 'are intended to: (1) compensate the court and other parties for the added expense caused by discovery abuses; (2) compel discovery; (3) deter others from engaging in similar conduct; and (4) penalize the offending party or attorney.'" *Id.* (quoting *Steward v. Int'l Longshoreman's Ass'n., Local No. 1408*, 306 Fed. Appx. 527, 529 (11th Cir. 2009)). "This Court possesses wide discretion over the discovery process and when discovery sanctions are appropriate." *Id.* (citing *Dude v. Cong. Plaza, LLC*, 17-80522-CIV, 2018 WL 4203888, at *5 (S.D. Fla. July 20, 2018) (J. Matthewman), *report and recommendation adopted sub nom.*, 2018 WL 4203886 (S.D. Fla. Aug. 29, 2018). "The severe sanctions permitted by Rule 37(b) are usually only imposed by district courts upon a finding (1) that the party's failure to comply with the order was willful or a result of bad faith, (2) the party seeking sanctions was prejudiced by the violation, and (3) a lesser sanction would fail to adequately punish and be inadequate to ensure compliance with court orders." *Id.* (quotations and citations omitted).

In this Circuit, this Court acts within its discretion in dismissing a case as a sanction under Rule 37(b) where a party "demonstrates a flagrant disregard for the court and the discovery process" and where the court takes into consideration whether a sanction less severe than dismissal

136461576.3

would be "equally effective." *Aztec Steel Co. v. Fla. Steel Corp.*, 691 F.2d 480, 481-82 (11th Cir. 1982) (holding that district court did not abuse its discretion in ordering dismissal where failure to comply with discovery was knowing and willful and where district court had concluded that "sanctions less severe than dismissal would be ineffective"). Although dismissal is considered "the most severe Rule 37 sanction," it is warranted "when a [party's] recalcitrance is due to willfulness, bad faith or fault." *Phipps v. Blakeney*, 8 F.3d 788, 790 (11th Cir. 1993). Similarly, "[d]ismissal under Rule 41(b) is appropriate where there is a clear record of 'willful' contempt and an implicit or explicit finding that lesser sanctions would not suffice." *Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999); *see also* Fed. R. Civ. P. 41(c) ("This rule applies to a dismissal of any counterclaim, crossclaim, or third-party claim.").

### 2. Failure to Preserve Electronically Stored Information Under Rule 37(e)

Federal Rule of Civil Procedure 37(e), as amended in 2015 states:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>>> (A) presume that the lost information was unfavorable to the party;
>>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>> (C) dismiss the action or enter a default judgment.

"Before the Court imposes sanctions under Rule 37(e), it must determine that: (1) the information sought constitutes ESI; (2) the ESI should have been preserved in anticipation of litigation; (3) the ESI is lost because a party failed to take reasonable steps to preserve it; and (4) the ESI cannot be restored or replaced through additional discovery." *Wyndham*, 2019 WL 4748328, at *5 (quotation and citation omitted). "Once these threshold elements are satisfied, sanctions may be appropriate if the Court finds prejudice or finds that a party acted with the intent to deprive the moving party of the ESI at issue." *Id.* (citation omitted). "Where there is no direct evidence of bad intent, bad faith may be found on circumstantial evidence where: (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim

16

at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason preferred by the spoliator." *Id.* (quotation and citation omitted).

### 3. *Failure to Conduct Reasonable Inquiry Under Rule 26(g)*

Rule 26(g)(1) provides in pertinent part, as it relates to a reasonable inquiry in advance of a discovery objection, that:

> Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name—or by the party personally, if unrepresented—and must state the signer's address, e-mail address, and telephone number. By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:
>
> > (A) with respect to a disclosure, it is complete and correct as of the time it is made; and
> > (B) with respect to a discovery request, response, or objection, it is:
> > > (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;
> > > (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and
> > > (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

The procedure set forth by Rule 26(g)(3) calls for "an appropriate sanction" if the certification violates Rule 26(g)(1) "without substantial justification" and "[t]he sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed. R. Civ. P. 26(g)(3).

Further, in the Standing Order on Discovery in this case, the Court specifically instructs the parties that:

> When a party asserts a discovery objection, the Court assumes that a Rule 26(g) compliant search has been conducted and that responsive materials exist. If a party interposes an objection and later asserts that no responsive documents exist, the Court **will** impose sanctions.

ECF No. 37 at 4 (emphasis in original).

### 4. *Inherent Authority*

In addition to ordering sanctions under Rule 26(g) and Rule 37, the Court also possesses the inherent power to order sanctions. "[T]he inherent power of a court 'can be invoked even if procedural rules exist which sanction the same conduct,' for these rules are not substitutes for the inherent power." *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010) (quoting *Glatter v. Mroz (In re Mroz)*, 65 F.3d 1567, 1575 (11th Cir. 1995)). "[T]he inherent power extends to a full range of litigation abuses." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).

### B. Defendants Should Be Sanctioned for Wrongfully Withholding, for Destroying, and for Failing to Properly Search for Evidence

As recounted above, Mr. Antle has wrongfully withheld key evidence that is fatal to his summary judgment arguments. Mr. Antle has also testified that he consistently deleted e-mails from his various email accounts, even after this case was filed. *See supra* at 3, 6-7, 12-13. He also testified that he failed to search known sources of information for potentially responsive documents. *See supra* at 10-12. And he failed to produce records within his possession, custody, or control on issues of clear relevance to this case. *See supra* at 9-14.

As a result, Plaintiff has been forced to incur undue burden and expense to search and find material that Defendants have been obligated to produce but did not, with no legitimate excuse. For example, if Antle had inadvertently deleted the DBPR correspondence, the documents were still within his control; he certainly knew of their existence and could have obtained them from the DBPR. *See, e.g., Searock v. Stripling,* 736 F.2d 650, 653 (11th Cir. 1984) ("Under Fed. R. Civ. P. 34, control is the test with regard to the production of documents. Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand.") Likewise, the newly-discovered WeFunder materials are indisputably responsive to several separate RFPs, and there is no plausible explanation that could excuse their non-production; these documents and the information contained therein, had to have been in existence (even partially) for some time.

Further, Mr. Antle, who considers himself an expert in trademark law and domain registration (Antle Dep. at 25:23-35:9; 288:10), is fully aware of the significance of website and internet use and social media activity, and uniquely aware of the manner in which Defendants used the various marks at issue in this case since July 1, 2019. Nonetheless, Defendants failed to produce any evidence at all of their social media activity between July 1, 2019 and the present until being

compelled to do so, and even then, the few pages produced are hardly representative of the types of activity or the significant timing of those activities by Defendants.

Additionally, Mr. Antle did not produce any of the key communications with Plaintiff discussing business plans with them, and demonstrating his clear intent to use the marks. *See, e.g.,* Ex. 7 (identifying examples of missing key documents). And in the documents obtained from the DBPR and wefunder.com, there is clear evidence of the rum being used as a part of the Island Company brand, contrary to Mr. Antle's claims of separate businesses. *Compare* ECF Nos. 135-5, 135-6, 135-7, 135-11, 139 & Ex. 2 (July 2022 DBPR emails) *with* ECF Nos. 116 & 117. And Mr. Antle has admitted that he failed to preserve evidence. *See supra* at 6-7, 9-13.

The materiality of the information not produced by Defendants and then discovered elsewhere (including as to Defendants' continued use of the Island Company marks), and Mr. Antle's admitted destruction of evidence and failure to review known sources of information, paint a clear picture of Defendants' intentional non-compliance with their discovery obligations. Along with Mr. Antle's attempted errata changes regarding these same issues (ECF No. 142-1), including his attempts to change testimony on issues such as Island Company Rum's use of the "same" marks as Island Company, the bad faith is clear. *See, e.g., Wyndham*, 2019 WL 4748328, at *5-6 (finding defendant willfully and in bad faith failed to comply with Court Orders and failed to preserve evidence, and entering default judgment on these grounds after finding lesser sanctions would be insufficient).

Defendants should be sanctioned by having their pleadings stricken, or at a minimum, an adverse inference regarding Defendants' destruction of evidence should be issued. Additionally, Defendants should be ordered to reimburse Plaintiff for the fees and costs occurred in connection with the discovery conferrals, preparation of joint discovery memoranda, preparation for and attendance at discovery conferences, and this Motion. And, if further information regarding intent is necessary for the Court's determination of the adverse inference requested herein, Plaintiff respectfully requests an evidentiary hearing on the issue of Mr. Antle's intent.

### C. Sanctions Should Be Awarded for Defendants' Objections to Certain RFPs, Later Followed by Their Claim that No Documents Exist

Two possibilities exist for Defendants' multiple rounds of objections to document requests, to which they later asserted in the April 29 RFP Responses that they had no responsive documents.

Either Defendants failed to conduct a proper inquiry pursuant to Rule 26(g) at the time they interposed their objections in their Feb. 7 RFP Responses and March 11 RFP Responses, *or* Defendants had responsive documents at the time of the Feb. 7 RFP Responses and March 11 RFP Responses, and later destroyed or wrongfully withheld them.  Under either scenario, Defendant's willful conduct is sanctionable. Defendants compounded this willful conduct by continuing to challenge the requests in the parties' conferrals leading up to the discovery conferences, and then inexcusably wasting the Court's and Plaintiff's time at the discovery conference and thereafter.

For these reasons too, Defendants should be sanctioned in accordance with this Court's Standing Order on Discovery, the Local Rules of this Court, and the Federal Rules of Civil Procedure, and at a minimum, be required to reimburse Plaintiff for the fees it incurred in connection with the conferral process, preparation of joint discovery memoranda, preparation for and attendance at discovery conferences, and this Motion. *See* Fed. R. Civ. P. 26(g)(3); ECF 37 at 4) ("If a party interposes an objection and later asserts that no responsive documents exist, the Court **will** impose sanctions." (emphasis in original)).

On a finding of entitlement, Plaintiff respectfully requests an opportunity to provide the Court with documentation to substantiate the amount of such fees.

WHEREFORE, Plaintiff respectfully seeks an Order sanctioning Defendants by striking Defendants' pleadings, or at a minimum, issuing an adverse inference regarding Defendants' withholding and destruction of evidence and awarding Plaintiff its fees and costs as described herein.

## <u>LOCAL RULE 7.1(a)(3) CERTIFICATION</u>

Pursuant to Local Rule 7.1(a)(3), undersigned counsel has conferred with Defendants' counsel regarding the issues raised in this motion in a good faith effort to resolve these matters, but the parties have been unable to do so.

<u>Dated</u>: July 23, 2024                Respectfully submitted,

**CARLTON FIELDS, P.A.**

By: */s/ Kristin A. Gore*
Eleanor M. Yost (Fla. Bar No. 1003178)
Email: eyost@carltonfields.com
4221 West Boy Scout Boulevard, Suite 1000
Tampa, Florida 33607
Tel: (813) 223-7000
Fax: (813) 229-4133

Kristin A. Gore (Fla. Bar No. 59090)
Email: kgore@carltonfields.com
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, Florida  33401
Tel: (561) 659-7070
Fax: (561) 659-7368

*Counsel for Plaintiff Island IP Acquisitions, LLC*

21